Clyde MALONE, Appellant,

v.

The STATE of Texas, Appellee.

No. 12–94–00075–CR.

Court of Appeals of Texas,
Tyler.

Aug. 28, 1996.

John J. Eastland, Tyler, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

RAMEY, Chief Justice.

The Appellant, Clyde Malone ("Malone"), was convicted by a jury of aggravated sexual assault of a child and sentenced by them to imprisonment for life. He raises four points of error on appeal, including challenges to the legal and factual sufficiency of the evidence; we will affirm the judgment of the trial court.

### LEGAL AND FACTUAL SUFFICIENCY OF THE EVIDENCE.

We will begin by addressing Malone's third and fourth points of error, wherein he alleges that the trial court erred because the evidence in the case was legally and factually insufficient to support his conviction. When an appellant challenges both the legal and factual sufficiency of the evidence, the reviewing court must first determine whether the evidence adduced at trial

was legally sufficient to support the verdict. *Clewis v. State,* 922 S.W.2d 126, 133 (Tex.Cr. App.1996). To determine whether the evidence before the trial court was legally sufficient to uphold the verdict, the appellate court must decide "whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *accord, Geesa v. State,* 820 S.W.2d 154, 157 (Tex.Cr.App.1991); *Richardson v. State,* 879 S.W.2d 874, 879 (Tex.Cr.App.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 643 (1995); *Moreno v. State,* 755 S.W.2d 866, 867 (Tex. Cr.App.1988). The jury's verdict should be upheld "unless it is found to be irrational or unsupported by more than a mere modicum of evidence." *Moreno,* 755 S.W.2d at 867. Even when the potential inferences raised by the evidence are in conflict, we "must presume that the trier of fact resolved any such conflict in favor of the prosecution and must defer to that resolution." *Turro v. State,* 867 S.W.2d 43, 47 (Tex.Cr.App.1993).

Malone was charged with aggravated sexual assault, and the indictment set out the elements of his crime as follows:

> ... Clyde Malone did then and there knowingly and intentionally cause penetration of the vagina of [the victim], a child younger than 14 years of age, and not the spouse of Clyde Malone, by an object; to-wit: the sexual organ of Clyde Malone.

The victim testified in trial, some nine years after the incident, that Malone raped her. She also read before the jury the entire statement she had given to police three days after the rape. The statement contained specific allegations concerning the fact that Malone had raped her. On appeal, Malone argues that there is no evidence that he actually penetrated the victim's vagina with his penis, but the victim specifically stated in both her earlier statement and at trial that Malone did so. Also, the doctor who examined the victim in the emergency room only three hours after the assault testified that he noted a tear and abrasion on the girl's hymen which would be consistent with penetration

and sexual assault. This is more than a mere modicum of evidence; therefore, the evidence is legally sufficient to support the jury's verdict. We overrule Malone's third point of error.

 After an appellate court determines that the evidence is legally sufficient to support the verdict under the *Jackson* standard, the court may then proceed to review the evidence for factual sufficiency. *Clewis,* 922 S.W.2d at 133. In conducting a factual sufficiency review, this Court must view all the evidence impartially and set the verdict aside "only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis,* 922 S.W.2d at 129 (quoting *Stone v. State,* 823 S.W.2d 375, 381 (Tex.App.—Austin 1992, pet. ref'd, untimely filed)). Therefore, in addressing Malone's second point of error, his factual sufficiency challenge, we have reviewed all of the evidence presented at trial.

The testimony at trial revealed that on the evening of April 19, 1984, the thirteen-year-old victim went with her mother, her stepfather, and her younger brother to the home of Clyde Malone and his wife Edna Malone ("Edna"), who were friends of the family. The adults, with the exception of the victim's mother, began to drink beer while the men played guitars. At about 10:00 or 10:30 p.m., the Malones decided to go to a liquor store in a neighboring county to get more beer. According to the victim's testimony, the Malones asked if she and her brother would ask their mother if they could go with the Malones to get the beer. The victim's mother gave her two children permission to go with the Malones, but once the two children were outside and away from their mother, the Malones told the boy to stay with his mother. The victim's mother testified that her son seemed upset and scared when he reported to her that the Malones would not let him accompany them and that she became concerned about the situation her daughter was in.

The victim sat in the front seat of the car, between Edna, who drove, and Clyde Malone, who sat by the passenger's side window. The victim testified that on the way to the liquor store, Clyde Malone began fondling

her breasts and pinching her. She told him to stop and also asked Edna to make him stop. Edna merely continued driving and told the girl that she shouldn't fight Malone and that "he just wants to make you feel good." When the victim turned her back to Malone, he grabbed her by the neck, choking her and told her that he would kill her if she told anyone what he was doing. He then stated, in very course terms, that he would have sex with the girl even "if it took all night."

When they reached the liquor store, an employee was in the process of closing it for the night, indicating that the time was about midnight. The employee agreed to let them in the store, and Edna purchased some beer. The employee testified in trial that a middle-aged woman and a young girl of about twelve or thirteen years old came into the store while a man stayed in the car. He recalled that the girl was crying and that when he asked her what was wrong, she could not get the words out because she was crying too hard. The woman accompanying the girl interrupted before she could say anything and told her to go back to the car. The employee testified that he remembered the girl's eyes and that she seemed scared and very upset. He did not notice any signs of injury on the girl. His supervisor, who had told him to reopen the store, testified that she also remembered a woman and a young girl who was crying. She also recalled that the girl appeared to be frightened and that when she asked the girl what was wrong, the girl had trouble answering and then gave the reply, "nothing." She remembered that she assumed the woman was the girl's mother and that the woman told the girl to go back to the car.

The victim testified that when the trio left the store, Malone began molesting her again and saying that he wanted to make her feel good and, again with profanity, that he planned to have intercourse with her. He told Edna to pull off the highway onto a side road, and once she did, he proceeded to get out of the car and remove his pants. He told the victim to remove her own pants or he would kill her. He then told her to get in the backseat of the car and proceeded to commit

the sexual assault. The victim testified that she fought with him but that he threatened to kill her unless she stopped. Edna Malone sat in the front seat of the car through the whole episode. After several minutes, Malone quit and got out of the car, and the victim returned to the front seat for the drive back to the Malone's home. On the way back, Edna told the victim to tell her parents that the trio had driven to Edna's father's house to show it to the victim.

When the Malone's car pulled into the driveway, the victim got out and ran to her family's pickup truck and jumped into the front seat, locking the passenger's door next to her. According to both her testimony and her mother's, her stepfather was passed out in the truck, and her mother and brother were in or near it. The mother testified that she had been worried about her daughter during her absence and had called the county sheriff three times. Edna Malone attempted to get into the truck, but the victim told her mother to keep Edna away. The family then drove off, and as soon as they left the Malone's driveway, the victim told her mother what had happened. The mother called the police department when she arrived home and then took her daughter to a local emergency room once the authorities arrived.

Testimony by the examining physician indicated that the victim arrived at the hospital at about 3:15 a.m. on April 20th and told the doctor that she had been raped vaginally about three hours earlier. The doctor performed various tests and examined the victim for injuries consistent with sexual assault. While the tests done upon the victim to find traces of semen or foreign hairs, a series of tests known as a "rape kit," turned out negative, the State elicited testimony from the examining physician and the laboratory technician proving that the great majority of such tests yield negative results. Though Malone argues that the lack of any residue of semen would undermine the girl's claim of having been penetrated, the doctor testified that it is not unusual for the perpetrator of a sexual assault to fail to ejaculate even though penetration occurs. The doctor testified that ejaculation might be prevented by distrac-

tions, such as the fighting of the victim or the drunkenness of the assailant.

■ The doctor further testified that he observed a "petechial lesion," about the size of a human finger, on the right side of the victim's neck. The doctor stated that the victim reported to him that she had been choked by her assailant and that this type of lesion was common for choking victims. He also noted an abrasion above her left eyebrow. His examination of the area in and around the victim's vagina revealed a "fresh abrasion and tear in the hymen." He stated that the damage to the hymen must have occurred within six hours prior to the examination and that such injuries were consistent with penetration of the vagina by a penis. Malone argues that the absence of any injury to the skin around the opening of the vagina suggests that no penetration occurred, or that the victim was penetrated by some other object, but the doctor testified that this fact actually supports the claim of penetration by a man's penis. He explained that a penis is unlikely to leave any injury to that part of the skin but that fingers or some other object might. Malone also argued that the tear observed in the girl's hymen was not significant enough to account for the fifteen to twenty minute sexual assault the victim complained of. The doctor further testified, however, that the hymen is very elastic in some girls and could have suffered no more injury than that observed on the victim here, especially if the assailant was drunk or otherwise having difficulty achieving an erection during the rape. We note here that proof of even the slightest penetration of the victim's vagina is sufficient to sustain Malone's conviction and that penetration may be proven with circumstantial evidence. *Nilsson v. State,* 477 S.W.2d 592, 595 (Tex.Cr.App.1972) (cited in *Everage v. State,* 848 S.W.2d 357, 359 (Tex.App.—Austin 1993, no pet.)).

■ The State also presented evidence that Malone escaped from the Smith County jail several weeks after his arrest on this charge and was not apprehended until about six years later, when law enforcement authorities found him and Edna Malone living in Arkansas under assumed names. We note that flight from the law is a circumstance which can indicate guilt. *Hardesty v. State,* 656 S.W.2d 73, 78 (Tex.Cr.App.1983).

After the close of the State's case, Malone offered evidence that he had strained his wrist, apparently displacing an earlier break, in an on-the-job accident about fifteen days prior to the assault in question. Malone's counsel argued in closing that because of his wrist pain and resultant lack of strength, Malone could not have choked the victim as alleged and could not have continued the sexual assault for fifteen to twenty minutes in the back seat of the car. Also in his closing argument, Malone's counsel stressed certain inconsistencies in the recollections of the victim and her mother. Given the amount of time that had elapsed between the trial date and the date of the assault, however, we find this argument unconvincing.

After reviewing all of the evidence offered at trial, we cannot say that the verdict is "so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust." *Clewis,* 922 S.W.2d at 129; *Stone,* 823 S.W.2d at 381. In fact, the overwhelming weight of the evidence indicates guilt. We hold that the evidence in this case is factually sufficient to support Malone's conviction; therefore, we overrule Malone's fourth point of error.

### INEFFECTIVE ASSISTANCE OF COUNSEL

■ We return to Malone's first point of error, wherein he alleges that he was deprived of his right to a fair trial because of the ineffective assistance of his trial counsel at the guilt/innocence phase of trial. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set out the two-part test ordinarily applied to determine whether a defendant received the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments to the UNITED STATES CONSTITUTION. First, the appellant must show that his counsel's representation fell below an objective standard of reasonableness, considering all of the circumstances. *Id.,* 466 U.S. at 688, 104 S.Ct. at 2064–65. Second, the appellant must also show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result would have been different. *Id.,* 466 U.S. at

694, 104 S.Ct. at 2068.[1] The courts of Texas have adopted the same test. *See Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Cr.App. 1986).

 Malone must establish ineffective assistance of counsel by a preponderance of the evidence. *Rodriguez v. State,* 899 S.W.2d 658, 665 (Tex.Cr.App.1995); *Moore v. State,* 694 S.W.2d 528, 531 (Tex.Cr.App.1985). Moreover, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. The defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065. Claims of ineffective assistance of counsel must be based upon the totality of the representation afforded, and not by isolated errors or omissions. *Ex parte Welborn,* 785 S.W.2d 391, 393 (Tex.Cr.App.1990). A defendant's right to effective assistance of counsel does not equate to a right to error-free counsel. *Ingham v. State,* 679 S.W.2d 503, 509 (Tex.Cr.App.1984). Counsel's actions are to be judged as of the time of trial and not by hindsight. *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex.Cr.App.1986), *cert. denied,* 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987).

 Malone cites several instances of what he believes was ineffective assistance on the part of his trial counsel. The first such instance is his counsel's failure to file a motion requesting that the State provide notice if it intended to introduce evidence of Malone's prior conviction for escape.[2] Malone admits that his chances of keeping that prior conviction from the jury were "highly unlikely," but he speculates that the State might have failed to provide the required notice and that the information could thereby have been kept from the jury's purview. We hold that such speculation falls short of the second requirement for a finding of ineffective assistance; he has not shown a reasonable probability of a different result had the motion been filed.

 Next, Malone points to six instances in which he claims the prosecution asked leading questions of the State's witnesses without objection on the part of his counsel. He does not explain how this omission hurt his case or fell below an objective standard of reasonableness but merely argues that leading is persuasive and suggestive in general. The State argues that failing to object to every instance of a leading question may have been a part of the trial attorney's valid trial strategy. It is well established that different trial strategies may appear in hindsight to have been mistaken without falling to the level of ineffective assistance. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Wilkerson,* 726 S.W.2d at 548. Malone has provided no argument to suggest otherwise and has not met the burden of either part of the *Strickland* test.

 Malone's third allegation of ineffective assistance is that his counsel failed to request that the jury be instructed to disregard certain comments made by the prosecution after the trial court sustained his objections on three occasions and that his counsel failed to move for a mistrial on another such occasion. By these omissions, he argues, his trial counsel failed to preserve any error for possible appellate review. Again, Malone merely delineates the alleged oversights and does not establish how each may qualify as an example of ineffective assistance under the *Strickland* test. The State argues that because the trial had involved a noticeable display of personal animosity between the attorneys for the two sides, Malone's counsel might have wanted to avoid any further appearance of animosity.[3] Malone has not met

---

1. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland,* 466 U.S. at 694, 104 S.Ct. at 2068.

2. Such notice is required by Rule 404(b) of the Texas Rules of Criminal Evidence or Article 37.07 of the Texas Code of Criminal Procedure when the defendant requests it.

3. In spite of the failures Malone alleges here, his trial counsel still managed during the State's closing argument to object eleven times, request instructions to disregard four times, and move for mistrial three times. The State argues that a decision to refrain from moving for a mistrial on a fourth occasion might well have been a valid trial strategy.

his burden as to these instances of alleged failure by his counsel.

■ Malone's fourth charge of ineffective assistance rests on his trial counsel's failure to object to the admission into evidence of State's Exhibits Eleven and Twelve, which Malone alleges were admitted out of time and without the proper supporting testimony. State's Exhibit Eleven was a map of the cities of Tyler and Chapel Hill and their surrounding areas, and Exhibit Twelve was a blown-up map of a portion of Smith County. The State argues that it had introduced the exhibits earlier in the trial and had used and modified the exhibits with certain trial witnesses prior to admitting them at the end of the State's case-in-chief. Malone does not explain how allowing the admission of the maps constituted a failure on the part of his counsel to meet an objective standard of reasonableness or, indeed, whether the maps could have been properly excluded at all. Neither does he show how any probability of a different result had his counsel objected to the maps. Again, Malone's complaint fails under the *Strickland* test.

■ Malone bases his fifth allegation of ineffective assistance on the fact that his trial counsel did not file a motion in limine to keep the State from mentioning his prior conviction for the same offense and that his counsel failed to object when the State alluded to it in trial. Before the trial at issue here, Malone had been convicted in 1990 for the same offense, but that conviction was overturned by this Court for the trial court's failure to properly consider Malone's motion for a change of venue. The only allusion to the earlier trial came when the doctor who examined the victim a few hours after the assault was on the stand:

> State: Did you have an opportunity to meet her [the victim] in 1990 in the Smith County Courthouse, to see her there?

> Witness: I don't recall.

Malone does not explain how allowing this particular reference to the 1990 conviction was a mistake which fell below an objectively reasonable standard of professionalism. Indeed, as a part of trial strategy, Malone's

counsel might refrain from objecting to such an innocuous reference in order to avoid calling the subject to the jury's attention. Also, Malone does not explain how a different result might have been obtained had an objection been attempted or a motion in limine filed. Malone has not shown ineffective assistance in this instance.

■ Finally, Malone contends that the assistance afforded him was ineffective because the record reveals that his counsel was sick during trial. He states that "[w]hen one is ill, inhibitions and mental clarity are reduced and one's judgment is somewhat impaired" and maintains that, therefore, his counsel could not have been at his physical and professional best during trial. Beyond this mere assertion, Malone does not assess his counsel's performance in light of this illness with regard to any particular failures or show how it might constitute ineffective assistance under the *Strickland* test. We hold that Malone has not proven ineffective assistance in any of the above instances, and we overrule his first point of error.

### IMPROPER JURY ARGUMENT

■ In his second point of error, Malone contends that the trial court erred in failing to grant a mistrial because of improper closing arguments by the State. The propriety of jury argument may be measured by the following standard:

> Proper jury argument must fall within one of four general areas: summation of the evidence; reasonable deduction from the evidence; answer to argument of opposing counsel; and pleas for law enforcement. In order to constitute reversible error, the jury argument must be extreme or manifestly improper, or inject new and harmful facts into evidence.

*McKay v. State,* 707 S.W.2d 23, 36 (Tex.Cr. App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986) (citations omitted).

■ Malone complains of five comments made during the State's closing, which we will address in the order in which they were made at trial. We begin our analysis by noting that in each of the first four instances, the court instructed the jury to disregard the

State's comment. Generally, a trial court's instruction to disregard improper argument cures any error. *Andujo v. State,* 755 S.W.2d 138, 144 (Tex.Cr.App.1988); *Anderson v. State,* 633 S.W.2d 851, 855 (Tex. Cr.App.1982); *Hamilton v. State,* 818 S.W.2d 880, 882 (Tex.App.—Houston [14th Dist.] 1991, pet. ref'd). This is so unless the improper argument is "so inflammatory that its prejudicial effect cannot reasonably be removed by such an admonition." *Andujo v. State,* 755 S.W.2d at 144; *accord, McKay,* 707 S.W.2d at 36.

▮▮▮▮▮ The first statement Malone complains of referred to a fact which the State claimed Malone had no explanation for: that the victim was seen crying by the liquor store employees while she was in the company of Malone and his wife but before the actual rape. Malone's counsel had argued in closing that the rape could have occurred after the girl left Malone's company and even in her own home. The fact that someone witnessed her distress in the presence of the Malones prior to the rape buttressed her allegation that Malone had repeatedly fondled her in the car on the way to the liquor store. The prosecutor offered to give Malone's counsel some of his time to explain these facts:

> STATE: Got an answer for that? I'll allow him some more time, your Honor. He doesn't have an answer for it. What is the answer for that? There's not an answer for that.
>
> DEFENSE: Your Honor, would the court instruct the jury that it's not up to [the State] to give me more time to argue?

Here, the State's argument was designed to address and highlight a weakness in one of Malone's defensive theories. As such, it was an answer to the argument of opposing counsel and was not extreme or manifestly improper. Even if it had been improper, the instruction to disregard would have cured any error in this instance.

▮▮▮▮ The second instance Malone cites occurred when the State began to read from the statement the victim had given to police in 1984 a few hours after the rape. The document itself was not allowed into evidence though the victim was allowed to read it to the jury in its entirety. The prosecutor stated "this document never made it into evidence, but the word ...," at which point Malone's counsel objected to the interjection by the State of matters not in evidence. After the court instructed the jury to disregard and denied Malone's motion for mistrial, the prosecutor said "[l]et me read to you something that is in evidence ..." and continued by reading from the victim's statement. The prosecutor's comment was not improper because the jury had witnessed the State's attempt to introduce the document itself into evidence and therefore knew that it had not been admitted. They then heard the victim read the whole document. The prosecutor's argument amounted to a summation of the evidence, and the instruction to disregard cured any potential error.

▮▮▮ The next two instances Malone complains of involved comments made to discredit his trial counsel, to which his counsel objected that the State was "striking at the defendant over the shoulders of the defense attorney." In the first instance, the prosecutor stated that Malone's counsel had insinuated that two of the State's witnesses had lied and declared that "it would just go to show the length to which [Malone's counsel] is willing to go to protect his client." In the second such example, the prosecutor criticized Malone's counsel for making a point in argument of the fact that the victim had gotten confused on the witness stand as to her own birthdate: "[h]ow proud you must be to be able to trip somebody up on something like that." We do not agree that the second of the two comments strikes at Malone; it is the State's rejoinder to the perceived insignificance of one part of the argument of Malone's counsel. The first of the two comments treads more closely on the path of impropriety, but it too addresses a part of Malone's counsel's argument that the prosecutor apparently believed to be overreaching. Malone offers no discussion concerning why the statement could not have been cured if it was, in fact, erroneous; the court's instructions to the jury to disregard the remarks cured any error.

The last portion of the State's closing argument that Malone complains of under his second point of error was not followed by an instruction to disregard because none was sought. The trial in this case took place in Collin County because of a change of venue from Smith County. After speaking of the concern that the people of Smith County have for law and order and justice, the prosecutor added another thought: "I hope there comes a time in the future, when there's a case in Collin County that needs to be disposed of, that can come to Smith County and let our citizens...." Malone's counsel objected on the ground that such argument was irrelevant to the case. While this particular appeal for law enforcement may stray from what is proper, Malone offers no argument to explain how it is "extreme or manifestly improper," and we do not find it to be so. *McKay,* 707 S.W.2d at 36.

We hold that there is no showing of reversible error with regard to any of the comments complained of by Malone here. Accordingly, his second point of error is overruled.

The judgment of the trial court is affirmed.

