**Claudio Frank HERNANDEZ, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–95–551–CR.**

Court of Appeals of Texas,
Fort Worth.

Jan. 2, 1997.

Rehearing Overruled March 27, 1997.

Law Offices of Allan K. Butcher, Allan K. Butcher and Allan K. Butcher, Jr., Fort Worth, for Appellant.

Tim Curry, Criminal District Attorney, Betty Marshall and Charles M. Mallin, Assistant Chiefs of the Appellate Section, Elizabeth A. Martin, Assistant Criminal District Attorney, David Hudson, Assistant Criminal District Attorney, Michael Casillas, Assistant Criminal District Attorney, Fort Worth, for Appellee.

Before CAYCE, C.J., and DAVID FARRIS (Sitting by Assignment) and DAY, JJ.

## OPINION

PER CURIAM.

Ronnie Owens was killed by a bullet fired inches from his chest. Appellant Claudio Frank Hernandez stands convicted of Owens's murder. On appeal, Hernandez challenges the legal and factual sufficiency of the evidence and contends the State commented on his failure to testify. We overrule his points of error and affirm his conviction.

■ In his first point of error, Hernandez contends there was no evidence he shot Owens. In reviewing the legal sufficiency of the evidence to support a conviction we view the evidence in the light most favorable to the verdict. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex.Crim.App.1992), *cert. denied*, 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993). From this review of the evidence we determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Emery v. State*, 881 S.W.2d 702, 705 (Tex.Crim. App.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1257, 131 L.Ed.2d 137 (1995). This standard concedes to the jury the responsibility to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979).

■ The evidence, viewed in the light most favorable to the verdict, placed Hernandez with Owens, in Owens's car, southwest of Fort Worth, two hours before Owens's body was found. Owens was found in a trash-filled vacant lot in a north Fort Worth neighborhood approximately thirty or thirty-five minutes from where he and Hernandez had been seen together. The vacant lot was in a

neighborhood where Hernandez had once lived and a few blocks from his old home. Earlier at Owens's home, a friend heard Owens ask Hernandez if he could get some LSD. Hernandez made a phone call and told Owens "he [Hernandez] could get some or something like that." The friend also heard Hernandez refer to someone called "Spook." It was this friend who saw Owens and Hernandez drive away in Owens's car. The witness who found the body saw two boys, about Hernandez's age, leaving the area; however, he was unable to identify Hernandez as one of the pair. Owens's car was found a few blocks from the vacant lot.

Additionally, two witnesses testified they spoke with Hernandez after Owens's body had been found. One witness, Hernandez's girlfriend Nina Loza, had once been Owens's girlfriend. After learning of Owens's murder, Loza spoke with Hernandez as many as five times a day and received as many as five letters mailed by Hernandez from jail. The other witness told of a conversation he had with Hernandez while both were in the Tarrant County Jail.

Hernandez's first conversation with Loza occurred after a detective spoke with her about the murder. Loza called Hernandez and asked him if he had been at Owens's home the day Owens was murdered. Hernandez lied and said he had not been there. Loza told him he had been seen at Owens's home, but again he denied it. About an hour later Hernandez called Loza, crying, and repeatedly saying he didn't mean to hurt anyone. Loza asked Hernandez if he was talking about Owens, and at one point he said, "I did it, I did it." From her testimony, it is apparent Loza understood Hernandez to say he killed Owens. Loza told Hernandez she was going to tell the police, and he responded he understood, she was a good person, and she "would have to do something like that." In one of his letters from jail Hernandez told Loza by then she knew who the real killer was, and it was not him; however, she did not understand that remark, and in all of his calls and letters he did not identify anyone else as involved in the murder.

After the murder, Hernandez also spoke with a fellow prisoner in the Tarrant County Jail telling him he "got" some "boy," somebody, in a field full of trash.

From our review of the evidence, we find the jury could have found all of the elements essential to establish Hernandez murdered Owens. *See Emery,* 881 S.W.2d at 705. Point of error one is overruled.

■ In his second point of error, Hernandez challenges the factual sufficiency of the evidence. *Clewis v. State,* 922 S.W.2d 126, 129–30 (Tex.Crim.App.1996). In considering this challenge we are not constrained to view all the evidence in the light most favorable to the State. *Id.* at 129. After considering all the evidence, we may sustain the challenge only if the verdict is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.*

Both Hernandez and the State agree that in defining the standard of review applicable to this second point, we may look to opinions addressing the standard applicable to challenges to the factual sufficiency of the evidence in civil cases. *E.g., Pool v. Ford Motor Co.,* 715 S.W.2d 629 (Tex.1986) (op. on reh'g); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660 (1951). Indeed, *Clewis* is replete with references to such opinions. *Clewis,* 922 S.W.2d at 129–35. Accordingly, we address point of error two by traveling a familiar and comfortable road.

■ An assertion that evidence is factually insufficient means the evidence supporting a fact finding is so weak or the evidence to the contrary so overwhelming that the finding must be set aside and a new trial ordered. *Garza v. Alviar,* 395 S.W.2d 821, 823 (Tex.1965). A more helpful definition is found in the requirements of an opinion reversing on factual sufficiency grounds: the opinion must detail the evidence relevant to the issue and clearly state why the finding is factually insufficient or is so against the great weight and preponderance as to be manifestly unjust, why it shocks the conscience, or why it clearly demonstrates bias. *Pool,* 715 S.W.2d at 635. The opinion must also state in what regard the contrary evidence greatly outweighs the evidence supporting the finding. *Id.* These requirements test any argument or theory supporting a

factual insufficiency point. Applied to the facts of this case, this test persuades us that point of error two cannot be sustained.

■ In sum, the evidence against Hernandez and the verdict based upon that evidence do not appear manifestly unjust, shock the conscience, or demonstrate bias. While the evidence is largely circumstantial, taken as a whole it sufficed to allow a jury to reasonably conclude beyond a reasonable doubt Hernandez shot Owens. That verdict is logically supported by Hernandez's numerous telephone calls to Loza in which he did not attempt to dissuade her from concluding he was the murderer. Further, Hernandez neither testified nor offered other evidence which significantly refuted the State's proof. Accordingly, point of error two is overruled.

■ In his third point of error, Hernandez contends the State improperly commented during closing argument on his failure to testify. Hernandez complains of argument referring to his failure to explain his theory that an unnamed third party was a source of LSD:

> Now, he does make this vague claim, "Well, you know I didn't do it," but he never comes up and says anything about Spook or explaining what happened that day in any of those letters or phone calls.

We overrule point of error three because the argument was not a comment on Hernandez's failure to testify; rather, it was in answer to opposing counsel's argument.

■ To determine if argument impermissibly referred to an accused's failure to testify we must consider whether the language used was manifestly intended or was of such character that the jury would naturally and necessarily consider it to be a comment on that failure. *Montoya v. State,* 744 S.W.2d 15, 35 (Tex.Crim.App.1987), *cert. denied,* 487 U.S. 1227, 108 S.Ct. 2887, 101 L.Ed.2d 921 (1988) (op. on reh'g); *Curry v. State,* 861 S.W.2d 479, 485–86 (Tex.App.—Fort Worth 1993, pet. ref'd). In contrast, jury argument is proper if it falls into certain categories including answer to argument of opposing counsel. *Gaddis v. State,* 753 S.W.2d 396, 398 (Tex.Crim.App.1988).

Hernandez's closing argument referred to his letter to Loza in which he denied murdering Owens and explained his earlier expressions of remorse as a consequence of setting up a drug deal between Owens and "Spook." This argument was based upon Loza's testimony. However, Loza testified Hernandez called her many times and wrote her as many as five letters, but only once denied shooting Owens. Further, there was no evidence any drug deal actually occurred, and there were only vague references to "Spook." Thus, the State's argument was a proper response to Hernandez's argument.

The judgment is affirmed.