TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-99-00190-CR







Julio Guia, Jr., Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF HAYS COUNTY, 22ND JUDICIAL DISTRICT


NO. CR-97-0319, HONORABLE GARY L. STEEL, JUDGE PRESIDING







 Appellant Julio Guia, Jr. appeals his conviction for the offense of aggravated sexual
assault of a child. (1) The jury found appellant guilty, and after determining that allegations of a
prior conviction for indecency with a child were true, the jury assessed appellant's punishment
at sixty years' imprisonment.


Issues


 Appellant advances three issues. First, he contends that he was denied the effective
assistance of trial counsel as counsel did not object to the introduction of a videotaped statement
of the child victim. Second and third, appellant challenges the legal and factual sufficiency of the
evidence to support his conviction. Appellant claims the evidence was insufficient to establish that
he penetrated the complainant's female sexual organ with his finger as alleged in the indictment. 
We will affirm the judgment of conviction.

 After a recitation of the facts, we shall initially discuss the sufficiency issues in
order to place the first issue in proper perspective.


Facts


 M.F., the complainant, testified at the February 1999 trial that she was eight years
old; that the incident with "Uncle Julio" happened in the "summer" one afternoon at his house
in San Marcos. Other evidence indicated the date of the offense was June 20, 1997.

 M.F. explained that appellant, Uncle Julio, invited her into his bedroom to watch
"Rescue 911" on television; that they both lay on the bed, each wearing a shirt and shorts; and
that the door was closed. She stated that appellant "started doing it to me"; that appellant "put
his hand up the back" and under her shorts and underwear and put his hand between her legs; and
that he "went between my legs." The record reflects:


Q: Okay. What could you tell that he was doing down there?


A: He was just like touching me, I think.


Q: What did he do with his hand?


A: It was just like touching and everything, and grabbing and everything.



 M.F. told the jury that appellant took her hand and placed it on his penis. M.F.
related that appellant stopped when someone outside walked by the windows to the bedroom. 
Appellant then "started again" and reached under her shorts a second time. Later, M.F. left the
bedroom and her grandparents came and picked her up. M.F. told her older sister, Vivian, what
happened. "I just told her how he did it to me and that's it." Vivian was under eighteen years
of age and was not an outcry witness.

 M.F. revealed that a similar incident happened before, when she was living with
her mother. Another uncle, Miguel from Mexico, did the same thing to her on a previous
occasion at night time.

 Leslie Ontiveros, an employee with the Texas Department of Protective and
Regulatory Services, was called by the State as an outcry witness. Ontiveros explained that she
was conducting an investigation into physical abuse by M.F.'s stepfather against others when she
came into contact with M.F. The complainant made an outcry to her about Uncle Julio's actions. 
Ontiveros testified that M.F. told her that on the occasion in question appellant had licked her
neck, kissed her on the lips, rubbed her breasts, and "had touched her thing." M.F. also told
Ontiveros that appellant put his hand on her "middle part" (her term for vagina) for a long time. 
Ontiveros related that M.F. then motioned with her index finger--"a poking." M.F. revealed that
what appellant did hurt her and she told him to stop. M.F. also told Ontiveros that another
person, an uncle named Miguel, on an earlier occasion, had poked her in her middle part (vagina)
and in her "butt."

 Kimberly Norris Burke, an employee of Roxanne's House, a child advocacy center, 
made a videotape of her interview with M.F. M.F. told Burke that appellant had kissed her
(M.F.) and that "doing it" meant "kissing and everything." M.F. then got up and grabbed her
private parts with her hand. She told Burke that appellant pulled up her shorts and touched her. 
Burke then displayed anatomically correct dolls to M.F. and asked her to explain what happened. 
M.F. took the female doll and placed her fingers inside the doll between the legs.

 The videotape was introduced. It supported Burke's testimony and showed M.F.
grabbing her vaginal area in response to a question. The tape also showed M.F. aggressively
using her fingers in pushing between the legs of the female doll. M.F. then took the hand of the
female doll and placed it on the front of the male doll's pants indicating appellant made her touch
his penis.

 Dr. Emilie Becker, an Austin psychiatrist, did an evaluation of M.F. and found her
depressed and somewhat demoralized. She recommended treatment for depression. Dr. Becker
related that it was normal for a child to have some gaps in recollection after a traumatic event. 
It was stipulated that there had been no medical examination of M.F.

 Ethel Wright, appellant's common-law wife, testified as a defense witness. She
related that the grandparents brought M.F. and her two sisters to the house on the date in question
about 5:30 p.m.; that she was cooking in the kitchen and appellant was in the master bedroom
with the door open; that M.F. and her younger sister, Olga, went into the bedroom on their own;
that she (Ethel) went to the bedroom from time to time to watch the television although there was
a television set in the living room where the other sister (Vivian) stayed; and that when M.F. and
Olga began jumping on appellant's bed she stopped them for fear they would fall. Wright fed the
children supper and then drove them to an aunt's house at 7:00 p.m. According to Wright, M.F.
made no outcry and there was nothing out of the ordinary about her behavior or clothing at the
time.

 Maria Villarreal, M.F.'s grandmother, testified that she and her husband took
M.F., her sister Olga, and two boys, Oscar and Joseph, to appellant's house on the date in
question. They later picked up the children at the house. Still later, her husband picked up
Vivian "at work." She denied M. F. made an outcry to her.

 Sandy Lara testified that at about 6:00 p.m. on the date in question Ethel Wright
brought M.F., Olga, and Vivian to her house. Later, Vivian walked the children back to
appellant's house which was not far away.

 There was some conflict in the evidence about Vivian's presence in appellant's
house at the time. Vivian was not a witness, and the issue does not appear material.


Legal Sufficiency


 The standard for reviewing the legal sufficiency of evidence is whether, viewing
the evidence in the light most favorable to the jury's verdict, any rational trier of fact could have
found beyond a reasonable doubt all the essential elements of the offense charged. See Jackson
v. Virginia, 443 U.S. 307, 319 (1979); Skillern v. State, 890 S.W.2d 849, 879 (Tex. App.--Austin
1994, pet. ref'd). The standard of review is the same in both direct and circumstantial evidence
cases. See King v. State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995); Green v. State, 840
S.W.2d 394, 401 (Tex. Crim. App. 1992). The State may prove its case by circumstantial
evidence if it proves all of the elements of the charged offense beyond a reasonable doubt. See
Easley v. State, 986 S.W.2d 264, 271 (Tex. App.--San Antonio 1998, no pet.) (citing Jackson, 443
U.S. at 319). The sufficiency of the evidence is determined from the cumulative effect of all the
evidence; each fact in isolation need not establish the guilt of the accused. See Alexander v. State,
740 S.W.2d 749, 758 (Tex. Crim. App. 1987). It is important to remember that all the evidence
the jury was permitted, properly or improperly, to consider must be taken into account in
determining the sufficiency of the evidence. See Garcia v. State, 919 S.W.2d 370, 378 (Tex.
Crim. App. 1994); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993); Rodriguez
v. State, 939 S.W.2d 211, 218 (Tex. App.--Austin 1997, no pet.).

 The jury is the exclusive judge of the facts proved, the weight to be given the
testimony, and the credibility of the witnesses. See Tex. Code Crim. Proc. Ann. art. 38.04 (West
1979); Alvarado v. State, 912 S.W.2d 199, 207 (Tex. Crim. App. 1993); Adelman v. State, 828
S.W.2d 418, 421 (Tex. Crim. App. 1992). The jury is free to accept or reject any or all of the
evidence presented by either party. See Saxton v. State, 804 S.W.2d 910, 914 (Tex. Crim. App.
1991). The jury maintains the power to draw reasonable inferences from basic facts to ultimate
facts. See Welch v. State, 993 S.W.2d 690, 693 (Tex. App.--San Antonio 1999, no pet.);
Hernandez v. State, 939 S.W.2d 692, 693 (Tex. App.--Fort Worth 1997, pet. ref'd). The
reconciliation of evidentiary conflicts lies solely within the province of the jury. See Heiselbetz
v. State, 906 S.W.2d 500, 504 (Tex. Crim. App. 1995).

 Under the Jackson standard, the reviewing court is not to position itself as a
thirteenth juror in assessing the evidence. Rather, it is to position itself as a final due process
safeguard insuring only the rationality of the fact finder. See Moreno v. State, 755 S.W.2d 866,
867 (Tex. Crim. App. 1988). It is not the reviewing court's duty to disregard, realign, or
reweigh the evidence. See id. The jury's verdict must stand unless it is found to be irrational or
unsupported by more than a "mere modicum" of evidence, with such evidence being viewed under
the Jackson light. See id. The legal sufficiency of the evidence is a question of law. See McCoy
v. State, 932 S.W.2d 720, 724 (Tex. App.--Fort Worth 1996, pet. ref'd) (citing Matson v. State,
819 S.W.2d 839, 846 (Tex. Crim. App. 1991)).


Indictment


 The indictment alleged in pertinent part that appellant:


On or about the 20th day of June, A.D., 1997, did then and there knowingly and
intentionally sexually assault M.F. by knowingly and intentionally causing his
finger to contact and to penetrate the female sexual organ of the aforesaid M.F.
and the aforesaid M.F. was then and there a child younger than 14 years of age.



Burden of Proof


 The grand jury having so alleged the offense, the prosecutor was obligated to prove
the allegation beyond a reasonable doubt. Appellant argues, however that the State failed to
sustain its burden with regard to the allegation that he penetrated the complainant's female sexual 
organ with his finger.


Penetration


 Proof of penetration of the vaginal canal is not required to establish penetration
under the foregoing allegations and within the meaning of section 22.021 of the Penal Code in
place at the time of the offense. See Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim. App.
1992); Karnes v. State, 873 S.W.2d 92, 96 (Tex. App.--Dallas 1994, no pet.). "Vagina" and
"female sexual organ" are not synonymous terms. See Everage v. State, 848 S.W.2d 357, 358
(Tex. App.--Austin 1995, no pet.). "Female sexual organ" is a more general term than "vagina"
and refers to the entire female genitalia, including the vagina and the vulva. See Aylor v. State,
727 S.W.2d 727, 729, (Tex. App.--Austin 1987, pet. ref'd); (2) see also Rodda v. State, 926 S.W.2d
377, 378 (Tex. App.--Fort Worth 1996, pet. ref'd); Bryant v. State, 685 S.W.2d 472, 474 (Tex.
App.--Fort Worth 1985, pet. ref'd). Touching beneath the fold of the external genitalia amounts
to penetration within the meaning of the aggravated sexual assault statute. See Karnes, 873
S.W.2d at 96. Penetration occurs so long as contact with the female sexual organ can reasonably
be regarded as more intrusive than contact with the outer vaginal lips. See Vernon, 841 S.W.2d
at 409.

 Penetration of the female sexual organ of a child with a finger can constitute
penetration "by any means" under the statutory definition of aggravated sexual assault. See
Means v. State, 955 S.W.2d 686, 691 (Tex. App.--Texarkana 1997, pet. ref'd untimely filed). For
the purposes of the statute, penetration may be proved by circumstantial evidence. See Nilsson
v. State, 477 S.W.2d 592, 595 (Tex. Crim. App. 1972); Pace v. State, 986 S.W.2d 740, 749
(Tex. App.--El Paso 1999, pet. ref'd); Everage, 848 S.W.2d at 359. Proof of the slightest
penetration is sufficient. See Pace, 986 S.W.2d at 749 n.9.

 Penetration, regardless of the object being used, is a matter within the knowledge
of an ordinary person and about which the complainant may testify. See Karnes, 873 S.W.2d at
97 (citing Garcia v. State, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978)). Testimony of a sexual
assault victim alone is sufficient evidence of penetration to support a conviction, even if the victim
is a child. See Karnes, 873 S.W.2d at 96. Thus, the testimony of a child victim alone is
sufficient to prove penetration despite the child's use of unsophisticated language to articulate the
act which does not track the statutory language. See Jones v. State, 817 S.W.2d 854, 856-57
(Tex. App.-- Houston [1st Dist.] 1991, no pet.) (citing Villalon v. State, 791 S.W.2d 130, 134
(Tex. Crim. App. 1990)). Moreover, there is no requirement that a victim's testimony be
corroborated by medical testimony or by other physical evidence. See Kemple v. State, 725
S.W.2d 483, 485 (Tex. App.--Corpus Christi 1987, no pet.); see also Butler, 875 S.W.2d 804,
806 (Tex. App.--Beaumont 1994, no pet.).

Discussion


 With this background, we examine appellant's contention that the evidence was
legally insufficient to prove penetration of M.F.'s female sexual organ as alleged.

 M.F. testified that appellant put his hand under her shorts and underwear and "went
between my legs" and that he was touching and grabbing "and everything." M.F. told Ontiveros,
the outcry witness, that appellant had his hand on her "middle part" (M.F.'s term for vagina) a
long time and indicated with her index finger "a poking." M.F. told Ontiveros that "this" hurt
her. Some of these matters were repeated to Burke who made the videotape. The videotape itself
showed M.F. grabbing her vaginal area when demonstrating what appellant did to her. The tape
also showed M.F. aggressively using her fingers in pushing between the legs of the anatomically
correct doll.

 In his motion for an instructed verdict, appellant raised the same sufficiency
question now presented on appeal. After the motion was overruled, appellant recalled M.F. as
a witness. Neither party asked questions to clarify the issue. Appellant's counsel asked M.F. if
she remembered her earlier testimony about someone else doing "something to her." M.F.
replied: "I told you that my other uncle did that, too." Ontiveros, the outcry witness, also
testified that M.F. had told her the other uncle had "poked" her (M.F.) in the "middle part"
(vagina) and in the "butt."

 A jury may use its common sense and apply common knowledge, observation, and
experience gained in the ordinary affairs of life when giving effect to the inferences that may
reasonably be drawn from the evidence. See Jones v. State, 900 S.W.2d 392, 399 (Tex. App.--
San Antonio 1995, pet. ref'd); Wawrykaw v. State, 866 S.W.2d 87, 88 (Tex. App.--Beaumont
1993, pet. ref'd). We conclude that a rational trier of fact could have found from the evidence
beyond a reasonable doubt all the essential elements of the offense charged, including the
penetration of M.F.'s female sexual organ by appellant's finger. The second issue is overruled.


Factual Sufficiency


 A review of the factual sufficiency of the evidence begins with the presumption that
the evidence supporting the conviction is legally sufficient. See Clewis v. State, 922 S.W.2d 126,
134 (Tex. Crim. App. 1996). Having first determined the issue of legal sufficiency in the instant
case, we proceed to review the evidence for factual sufficiency. See id. at 133; Malone v. State,
935 S.W.2d 433, 437 (Tex. App.--Tyler 1996, no pet.).

 In a challenge to the factual sufficiency of the evidence, we view the evidence
without employing the prism of "in the light most favorable to the verdict." Clewis, 922 S.W.2d
at 134; Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin 1992, pet. ref'd untimely filed). 
A reviewing court must consider all of the evidence impartially, comparing evidence that tends
to prove the existence of a disputed fact or facts with evidence that tends to disprove that fact or
those facts. See Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim. App. 1997). The verdict
or the judgment is to be set aside only when the factual finding is so against the great weight and
preponderance of the evidence as to be clearly wrong and unjust. See Clewis, 922 S.W.2d at 129. 
In a factual sufficiency analysis, it must be remembered that the trier of fact is the sole judge of
the weight and credibility of the testimony. See Santellan, 939 S.W.2d at 164. Appellate courts
should be on guard not to substitute their own judgment in these matters for that of the trier of
fact. See id. One principle of a factual sufficiency analysis is deference to the findings of the jury
or other fact finder. See Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Appellate
courts should exercise their jurisdiction to review the factual sufficiency of the evidence only to
prevent manifestly unjust results; they are not free to reweigh the evidence and set aside a jury
verdict merely because the judges believe a different result is more reasonable. See Reaves v.
State, 970 S.W.2d 111, 115 (Tex. App.--Dallas 1998, no pet.). A decision is not manifestly unjust
merely because the jury resolved conflicting views of evidence in favor of the State. See Cain,
958 S.W.2d at 410. "Courts of Appeals are not at liberty to engage in fact finding." Id. at 409.

 We have now been instructed that the complete and correct standard a reviewing
court must follow in conducting a factual sufficiency review of the elements of a criminal offense
is to ask whether a neutral review of all the evidence, both for and against the finding,
demonstrates that the proof of guilt is so obviously weak as to undermine the confidence in the
jury's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed
by contrary proof. See Johnson v. State, No. 1915-98, slip op. at 16-18 (Tex. Crim. App. Feb.
9, 2000).

 There are facts supporting the State's version. Appellant's wife, however, testified
that she was in and out of the bedroom at the time in question and observed no offense. We have
examined all the evidence impartially, have given due deference to the jury's verdict, and have
applied the Johnson standard. We conclude that the verdict is not so contrary to the
overwhelming weight of evidence as to be clearly wrong and unjust. We overrule the third issue.


Ineffective Assistance of Counsel


 In his first issue, appellant contends that he was denied the effective assistance of
counsel when his trial counsel failed to object to the introduction of the videotaped statement of
the child victim.

 In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme
Court held that in order to show ineffective assistance of counsel, a convicted defendant must: 
(1) show that his trial counsel's performance was deficient, in that counsel made such serious
errors he was not functioning effectively as counsel and (2) show that the deficient performance
prejudiced the defense to such a degree that the defendant was deprived of a fair trial. See id. at
686-87; Oestrick v. State, 939 S.W.2d 232, 237 (Tex. App.--Austin 1997, pet. ref'd); Banks v.
State, 819 S.W.2d 676, 681 (Tex. App.--San Antonio 1991, pet. ref'd). Unless a defendant makes
both showings, it cannot be said that the conviction resulted from a breakdown in the adversary
process that renders the result unreliable. See Strickland, 466 U.S. at 687; Oestrick, 939 S.W.2d
at 237.

 The two-pronged Strickland test has been adopted in Texas. See Hernandez v.
State, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986); O'Hara v. State, 837 S.W.2d 139, 143 (Tex.
App.--Austin 1992, no pet.). Under this test, a defendant has the burden to prove a claim of
ineffective assistance of counsel by a preponderance of evidence. See McFarland v. State, 928
S.W.2d 482, 500 (Tex. Crim. App. 1996).

 The review of a claim of ineffective assistance of counsel is highly deferential. See
Strickland, 466 U.S. at 689. A reviewing court must indulge a strong presumption that trial
counsel's conduct falls within a wide range of reasonable representation and that the challenged
action might be considered sound trial strategy. See McFarland, 928 S.W.2d at 500. An
ineffective counsel claim cannot be demonstrated by isolating one portion of counsel's
representation but instead must be judged on the totality of the representation. See Strickland, 466
U.S. at 670; Oestrick, 939 S.W.2d at 237.

 Appellant urges that the single error of his trial counsel in failing to object to the
videotape of the child victim deprived him of his constitutional right to the effective assistance of
counsel. The State argues that the failure to object was a part of appellant's trial strategy and did
not establish ineffective assistance.

 Isolated instances in the record reflecting errors of commission or omission do not
necessarily render counsel's performance ineffective. See McFarland v. State, 845 S.W.2d 824,
843 (Tex. Crim. App. 1992); Mazratian v. State, 961 S.W.2d 353, 357 (Tex. App.--Houston [1st
Dist.] 1997, no pet.). The failure to object may be considered within the bounds of trial strategy. 
See Cain v. State, 976 S.W.2d 228, 237 (Tex. App.--San Antonio 1998, no pet.). Any error in
trial strategy will be deemed inadequate representation only if counsel's actions are without a
plausible basis. See Thomas v. State, 886 S.W.2d 388, 392 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd) (citing Ex parte Ewing, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978)).

 A strong presumption exists that counsel's actions "might" be considered sound
trial strategy. Gravis v. State, 982 S.W.2d 933, 937 (Tex. App.--Austin 1998, pet. ref'd) (citing
Jackson v. State., 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Appellate courts will not
speculate about counsel's trial strategy. See id. An appellant may, however, rebut the
presumption of effectiveness by providing a record from which the reviewing court may determine
that trial counsel's performance was not based on sound trial strategy. See id. Appellant filed
a motion for new trial, but it was not based on the ineffective assistance of counsel. See Reyes
v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Moreover, there was no hearing on the
motion. The only record available to overcome the presumption is the trial record.

 After M.F., the complainant, testified live, the State offered the videotape into
evidence. Twice appellant's trial counsel expressly stated: "[N]o objection." The trial court
called attention to the statute governing the use of such a videotape and suggested several
problems the statute presented with regard to the admission of the videotape under the
circumstances. See Tex. Code Crim. Proc. Ann. art. 38.071 (West Supp. 2000). After an off-the-record discussion, appellant's counsel informed the trial court that he had consulted with
appellant personally about making objections to the videotape. Counsel then stated: "We've
decided to waive any objections to the video, although I think there are several. We've discussed
strategy and we feel the best strategy would be to waive any objections to the video and let the
video in."

 The State points out that trial counsel's actions and remarks during his opening
statement, trial, and jury argument show a trial strategy of attempting to convince the jury that
there was no thorough investigation and that the child's testimony was tainted because the child
was subjected to improper and suggestive questioning during a number of interviews, including
the making of the videotape. The record supports the State's assertions.

 Appellant has not sustained his burden of proof and has not met the two-pronged
test of Strickland. The first issue is overruled.

 The judgment is affirmed.




 


 John F. Onion, Jr., Justice

Before Justices Kidd, Patterson and Onion*

Affirmed

Filed: April 20, 2000

Do Not Publish
















* Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by
assignment. See Tex. Gov't Code Ann. § 74.003(b) (West 1998).
1. Act of May 29, 1995, 74th Leg., R.S., ch. 318, § 7, 1995 Tex. Gen. Laws 2734, 2737
(Tex. Penal Code § 22.021, since amended and now codified as Tex. Penal Code Ann.
§ 22.021(a)(1)(A)(i)(2)(B) (West Supp. 2000)).
2. Aylor discusses the legislative amendment to an earlier version of the statute. The
amendment used the term "female sexual organ" for the first time because of the restrictive
meaning given to the term "vagina" by court decisions. See id. at 730.



88, 392 (Tex. App.--Houston [1st Dist.] 1994,
pet. ref'd) (citing Ex parte Ewing, 570 S.W.2d 941, 945 (Tex. Crim. App. 1978)).

 A strong presumption exists that counsel's actions "might" be considered sound
trial strategy. Gravis v. State, 982 S.W.2d 933, 937 (Tex. App.--Austin 1998, pet. ref'd) (citing
Jackson v. State., 877 S.W.2d 768, 771 (Tex. Crim. App. 1994)). Appellate courts will not
speculate about counsel's trial strategy. See id. An appellant may, however, rebut the
presumption of effectiveness by providing a record from which the reviewing court may determine
that trial counsel's performance was not based on sound trial strategy. See id. Appellant filed
a motion for new trial, but it was not based on the ineffective assistance of counsel. See Reyes
v. State, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993). Moreover, there was no hearing on the
motion. The only record available to overcome the presumption is the trial record.

 After M.F., the complainant, testified live, the State offered the videotape into
evidence. Twice appellant's trial counsel expressly stated: "[N]o objection." The trial court
called attention to the statute governing the use of such a videotape and suggested several
problems the statute presented with regard to the admission of the videotape under the
circumstances. See Tex. Code Crim. Proc. Ann. art. 38.071 (West Supp. 2000). After an off-the-record discussion, appellant's counsel informed the trial court that he had consulted with
appellant personally about making objections to the videotape. Counsel then stated: "We've
decided to waive any objections to the video, although I think there are several. We've discussed
strategy and we feel the best strategy would be to waive any objections to the video and let the
video in."

 The State points out that trial counsel's actions and remarks during his opening
statement, trial, and jury argument show a trial strategy of attempting to convince the jury that
there was no thorough investigation and that the child's testimony was tainted because the child
was subjected to improper and suggestive qu