COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| SHAUNTENETTE TELEPAK, | | No. 08-16-00104-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 41st District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20150D00941) |
| | § | |

## **O P I N I O N**

A jury found Shauntenette Telepak guilty of misdemeanor assault on a family member, her estranged husband. On appeal, she challenges the sufficiency of the evidence to support the conviction, and further claims her trial counsel was ineffective. We reject both contentions and affirm the conviction.

### FACTUAL SUMMARY

Appellant married Jeffrey Telepak in May 2010. Both were career military. Jeffrey retired as a Command Sergeant Major in the summer of 2014, and followed Appellant to El Paso when she transferred to attend the Sergeant Major's Academy at Fort Bliss. They had one child by this marriage, a son born in February 2014.

Only because it colors the disputed versions of events, we describe Jeffrey and Appellant's physical appearance. Both are about the same height. At the time of these events, Jeffrey was 51

years old and weighed 160 pounds. He describes himself as a small, weak guy who does cardio but does not lift weights. The investigating detective in this case was somewhat less charitable, and described him as "scrawny" and "thin." Jeffrey was both a cook and recruiter in the Army, but for each of his 31 years of military service, he would have to pass a physical fitness exam twice a year. Conversely, Appellant was 41 years old at the time of trial and weighed 180 pounds. She is described as "rock solid" and "very muscular." Jeffrey claims she is a bodybuilder.

In December 2014, the couple separated. Jeffrey moved into his own apartment; Appellant was not listed on Jeffrey's apartment lease. While separated, Appellant and Jeffrey had informally worked out a custody arrangement for their child which is the genesis of the events we describe here.

Appellant attended a college class on Tuesday nights, and Jeffrey would ordinarily pick-up the child from daycare on Tuesday afternoons and care for him until Wednesday mornings. Based on phone texts exchanged on Monday, January 26, however, Jeffrey believed that Appellant was going to take the child back at 8:00 pm on Tuesday night, and he made other plans for that evening. Appellant disagreed, believing that Jeffrey would take care of the child that evening. The two exchanged less than friendly text messages on Tuesday, January 27th.

In one of the texts, Appellant sent a photo of a $50 receipt for clothes that she had just purchased for the child that day. Part of the childcare argument pertained to packing clothing for the child. Just before 8:00 pm on Tuesday, Appellant went to Jeffrey's apartment and left the bag of new clothes by his front door. She then phoned or texted him to say that he should step outside and pick up the bag. When he eventually did, he saw her in the parking lot. With Jeffrey at the front door, and Appellant in her vehicle, the two had a heated exchange over who would care for the child that night. After they hung up, Jeffrey went back inside his apartment and texted

2

Appellant that he would have the child at her apartment door at eight o'clock. Appellant responded that she was coming to get the child.

According to Jeffrey, she banged on his door a few seconds later and was screaming to get the child. Jeffrey cracked the door open and told her to hold on while he packed the child's bag, but she walked into the apartment. Appellant then picked up the child, and according to Jeffrey, a child's car seat that he claimed was his. She supposedly said, "You're not going to need this anymore, because you're not going to see him anymore." Jeffrey followed Appellant outside, and the two argued some more over the car seat which Jeffrey eventually let her have. He then returned to his apartment.

The couple's version of events sharply diverge at this point. Jeffrey claims that about a minute later Appellant pounded on his front door. He cracked the door, thinking she had calmed down and was returning the car seat, but instead she demanded some "sippy" cups that were left in the apartment. He told her to stay outside and that he would retrieve them. When he tried to close the door, she wedged her foot inside the doorway. Even though he was telling her to stay outside, she overpowered him and forced her way into the apartment. She then pushed him aside, went into the kitchen, and began rifling through the refrigerator and countertops looking for the sippy cups. The cups, however, were in a bag in the living room, and Jeffrey tossed the bag out the front door and told Appellant to leave.

According to Jeffrey, she grabbed him and screamed that he needed to go outside and pick up the cups. He tried to escape down the hallway of his apartment, but she slammed him up against the wall. She then put her hands up under his neck and lifted him up, while screaming, "I will kill you. You f---k with me and my baby, I will kill you, you sorry motherf---r. I will kill you." She had her hands on his throat for 20 to 30 seconds. He claims she lifted him off the ground, and that

3

he could barely breathe. When she let him go, he fell to the ground. She then pounced on top of him, kneed him in the back, and kicked him. She had her combat boots on while he was bare footed. When he raised his foot to block a kick, she injured one of his toes. She then left and he called 911.

Conversely, Appellant's version paints a different picture. When she came to the door to ask for the sippy cups, Jeffrey engaged in a game where he would open the door, ask what she wanted, then close it and return later only to ask again what she wanted. He did this four times. On the third occasion, he struck Appellant on the back with the door. The fourth time, she went into the apartment. He was pushing her, telling her to get the "f--k out of his apartment." She told him, "You don't want to do this" and she proceeded to the kitchen. Jeffrey then threw the cups over her shoulder, out the door, and they landed under her vehicle. She started to walk out of the apartment when Jeffrey began pushing her several times in the back. On the third push, she turned around, and stopped him with her forearm, again telling him "You do not want to do this." He then quit pushing her, and she turned and walked out of the apartment.

The State called Detective Gonzalez who had investigated the incident. He met Jeffrey at William Beaumont Hospital that evening at 11:00 pm. He noted that Jeffrey had red marks on his throat and head, and was having difficulty talking. The State introduced photographs that showed markings on Jeffrey's neck and a bruise on one of his toes.

That night, the officers also went to interview Appellant. She repeated essentially the same story she told at trial. She did not tell the officers, however, that she ever felt threatened. She did tell them that she held Jeffrey against a wall with her forearm against his neck for about 30 seconds until he calmed down. At a protective order hearing in the couple's divorce, she also testified that she held him until he turned red.

4

The State indicted Appellant for the felony offense of intentionally, knowingly, or recklessly impeding the normal breathing of Jeffrey by applying pressure to his throat or neck. TEX.PENAL CODE ANN. § 22.01(b)(2)(B)(West Supp. 2016). The jury returned a guilty verdict on the lesser included misdemeanor charge of assault Appellant raises two issues on appeal. The first challenges the sufficiency of the evidence to support the verdict.

## SUFFICIENCY OF THE EVIDENCE

### Standard of Review

Evidence is legally sufficient when, viewed in the light most favorable to the verdict, *any* rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex.Crim.App. 2010)(establishing legal insufficiency under *Jackson v. Virginia* as the only standard for review of the evidence).

The jury is the sole judge of credibility and the weight attached to the testimony of each witness. *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex.Crim.App. 2014). It is the fact finder's duty "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *See Clayton v. State*, 235 S.W.3d 772, 778 (Tex.Crim.App. 2007), *quoting Jackson*, 443 U.S. at 319, 99 S.Ct. 2781. The jury also may choose to believe or disbelieve that testimony. *Lancon v. State*, 253 S.W.3d 699, 707 (Tex.Crim.App. 2008); *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.--El Paso 1995, pet. ref'd). When the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Dobbs*, 434 S.W.3d at 170; *see also Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone may be sufficient to establish guilt. *Dobbs*, 434 S.W.3d at 170; *Carrizales v. State*, 414 S.W.3d 737, 742 n.20 (Tex.Crim.App. 2013), *citing Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Dobbs*, 434 S.W.3d at 170; *Hooper*, 214 S.W.3d at 13.

We remain mindful that "[t]here is no higher burden of proof in any trial, criminal or civil, and there is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks*, 323 S.W.3d at 917 (Cochran, J., concurring). Nonetheless, if a rational fact finder could have found the defendant guilty, we will not disturb the verdict on appeal. *Fernandez v. State*, 479 S.W.3d 835, 838 (Tex.Crim.App. 2016).

## Applicable Law

To sustain its burden of proof, the State was required to show beyond a reasonable doubt that Appellant: 1) intentionally, knowingly, or recklessly; 2) caused bodily injury to another (here a family member). *See* TEX.PENAL CODE ANN. § 22.01(a)(1)(Vernon Supp. 2016); *Thomas v. State*, 303 S.W.3d 331, 332 (Tex.App.--El Paso 2009, no pet.). Bodily injury is defined to mean "physical pain, illness, or any impairment of physical condition." TEX.PENAL CODE ANN. § 1.07(8)(West Supp. 2016). The Texas Court of Criminal Appeals has broadly interpreted this definition to include "even relatively minor physical contacts so long as they constitute more than mere offensive touching." *Lane v. State*, 763 S.W.2d 785, 786 (Tex.Crim.App. 1989); *see also Amaro v. State*, 08-14-00052-CR, 2016 WL 3344568, at *12 (Tex.App.--El Paso June 14, 2016, no pet.)(not designated for publication). In addition, the existence of a cut, bruise, or scrape on

6

the body is sufficient evidence of physical pain necessary to establish "bodily injury" within the meaning of the statute. *Arzaga v. State,* 86 S.W.3d 767, 778 (Tex.App.--El Paso 2002, no pet.).

## The Evidence Was Sufficient

The evidence here easily supports all these elements. Jeffrey testified that Appellant pushed him up against the wall and put her hands on his throat. Appellant admitted to intentionally pinning him against the wall. The photographs of the markings and bruising to either Jeffrey's neck or his foot demonstrate a bodily injury. *Arzaga*, 86 S.W.3d at 778. The investigating officer testified that Jeffrey's neck injury impaired his ability to speak that evening. Jeffrey testified that the injury was painful. The jury may have had reservations as to whether the injury impeded Jeffrey's breathing, which was a predicate to the felony charge. But merely because the jury believed the State did not prove that particular element does not negate that Jeffrey suffered some bodily injury to his neck or foot.

Because Appellant appropriately raised self-defense, the State also carried the burden of disproving beyond a reasonable doubt that Appellant acted in self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594-95 (Tex.Crim.App. 2003)(when evidence of self-defense is admitted by defendant, burden of persuasion to negate self-defense shifts to State). Self-defense is statutorily defined. A "person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force." TEX. PENAL CODE ANN. § 9.31 (West 2011). "The Penal Code justification for self-defense focuses on the existence of some necessity, the circumstances under which the force was used, the degree of force used, and the type of conduct against which the force was used." *Tidmore v. State*, 976 S.W.2d 724, 728 (Tex.App.--Tyler 1998, pet. ref'd);

7

*Collins v. State*, 08-15-00103-CR, 2017 WL 192913, at *7 (Tex.App.--El Paso Jan. 18, 2017, pet. ref'd)(not designated for publication). The evidence supports the jury's rejection of the defense.

First, the jury may have believed that Appellant used a degree of force in excess of what was required. According to Appellant, Jeffrey pushed her in the back to get her out of his apartment. Yet, the jury could have believed that she then pinned him up against the wall (off his feet) and choked him for 20 to 30 seconds. Second, the jury could have believed that Jeffrey was privileged to push Appellant, and thus her use of force was no longer justified. A person has a right to use force to protect their property, and Jeffrey wanted Appellant out of his apartment. TEX. PENAL CODE ANN. § 9.41(a)(West2011)("A person in lawful possession of land . . . is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to prevent or terminate the other's trespass on the land or unlawful interference with the property."). Appellant was not listed on Jeffrey's lease and otherwise had no right to be in the apartment. Appellant acknowledged that Jeffrey told her to leave. Consequently, the jury could have believed that Jeffrey's use of force was justified, and if so, Appellant could no longer justify her use of force to resist him. TEX.PENAL CODE ANN. § 9.31(a)(a person is justified in used force "to protect the actor against the other's use or attempted use of *unlawful* force.")[emphasis supplied].

Appellant's sufficiency argument acknowledges that the jury faced conflicting accounts of the underlying facts. Under our standard of review, we must assume the jury resolved those conflicts against Appellant. *Clayton*, 235 S.W.3d at 778. The balance of Appellant's argument cites a litany of case where various courts have reversed convictions for insufficient evidence. Appellant makes no attempt to correlate the facts of those cases with the issues here. We do not doubt the correctness of the holdings in those cases. We are simply at a loss to see how they assist

8

Appellant.  While the resolution of legal insufficiency challenges from other reported cases might be instructive, each case is ultimately judged on its own facts.  *Sadler v. State*, 364 S.W.2d 234, 238 (Tex.Crim.App. 1963).  We overrule Issue One.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Appellant's second issue complains that her two retained trial lawyers provided ineffective assistance of counsel.  We disagree.

### Framework for Review

To prevail on a claim of ineffective assistance of counsel, Appellant must establish by a preponderance of evidence that: (1) her attorney's performance was deficient; and that (2) her attorney's deficient performance deprived her of a fair trial.  *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Ex parte Chandler*, 182 S.W.3d 350, 353 (Tex.Crim.App. 2005).  Appellant must satisfy both *Strickland* elements, and the failure to show either deficient performance or prejudice will defeat the claim. *Perez v. State*, 310 S.W.3d 890, 893 (Tex.Crim.App. 2010); *Rylander v. State*, 101 S.W.3d 107, 110-11 (Tex.Crim.App. 2003).

Under the first prong of the *Strickland* test, Appellant must show the attorney's performance fell below an objective standard of reasonableness.  *Thompson v. State*, 9 S.W.3d 808, 812 (Tex.Crim.App. 1999).  Stated otherwise, she must show counsel's actions do not meet the objective norms for professional conduct of trial counsel.  *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex.Crim.App. 2002).  Under the second prong, Appellant must establish that there is a reasonable probability that but for her attorney's deficient performance, the outcome of the case would have been different.  *See Strickland*, 466 U.S. at 694, 104 S.Ct. at 2069; *Thompson*, 9 S.W.3d at 812. "Reasonable probability" is that which is "sufficient to undermine confidence in

the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Jackson v. State*, 973 S.W.2d 954, 956 (Tex.Crim.App. 1998).

We presume that the attorney's representation fell within the wide range of reasonable and professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001), *citing Tong v. State*, 25 S.W.3d 707, 712 (Tex.Crim.App. 2000). Ineffective assistance claims must be firmly founded in the record to overcome this presumption. *Thompson*, 9 S.W.3d at 813. Consequently, a direct appeal is usually an inadequate vehicle for raising an ineffective assistance of counsel claim because the record is generally undeveloped as to why trial counsel did what he or she did. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005); *Thompson*, 9 S.W.3d at 814 n.6. When the record is silent as to trial counsel's strategy, we will not conclude that the Appellant received ineffective assistance unless the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed*, 187 S.W.3d at 392, *quoting Garcia v. State*, 57 S.W.3d 436, 440 (Tex.Crim.App. 2001); *see also Rylander*, 101 S.W.3d at 110-11 (noting that "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective"); *Massaro v. United States*, 538 U.S. 500, 504-05, 123 S.Ct. 1690, 1694, 155 L.Ed.2d 714 (2003)("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reason for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. . . . The trial record may contain no evidence of alleged errors of omission, much less the reasons underlying them."). With these standards in mind, we consider Appellant's complaints about her trial counsel.

## No Showing of Deficient Performance

Appellant structures her argument by setting forth in two paragraphs the claimed failings of trial counsel. Most of her descriptions of the claimed failings, however, comprise little more than a sentence. Her appellate brief then summarizes numerous reported cases that held trial counsel ineffective under the facts of those particular cases. Nowhere does Appellant relate those cited cases to the errors she claims her trial counsel made. Nor does she attempt to demonstrate how the claimed trial errors affected the outcome in this case. Setting aside the issue of whether Appellant has adequately briefed her issue, we reject each of her contentions as we understand them.

### *Leading questions*

Without discussion of any particular question or answer, Appellant contends that her trial counsel permitted "numerous and continued leading" questions by the State. "Leading questions are questions that suggest the desired answer, instruct the witness how to answer, or put words into the witness's mouth to be echoed back." *Tinlin v. State*, 983 S.W.2d 65, 70 (Tex.App.--Fort Worth 1998, pet. ref'd). Our evidence rules provide that "[l]eading questions should not be used on direct examination except as necessary to develop the witness's testimony." TEX.R.EVID. 611(c).

Despite the general rule disfavoring leading questions on direct examination, "it is sound trial strategy for opposing counsel to choose not to object to leading questions when the evidence will come in anyway." *Young v. State*, 10 S.W.3d 705, 713 (Tex.App.--Texarkana 1999, pet. ref'd). Seasoned trial counsel understand that needless objections over uncontested matters are more likely to annoy a jury than accomplish any useful purpose. *McWilliams v. State*, 08-16-00036-CR, 2017 WL 3614185, at *5 (Tex.App.--El Paso Aug. 23, 2017, no pet. h.)(not designated for publication). The record citations to the leading questions that Appellant provides fall into this

11

category. Appellant cites to several pages of the record that contain leading questions. Nonetheless, the leading questions on those pages appear to be the type of inquiries used to orient the witness to the next line of inquiry. Even if objectionable, the questions could have been easily rephrased had an objection been lodged. A valid trial strategy could have included foregoing objections on those questions, and accordingly, Appellant has not rebutted the trial strategy presumption. *Wert v. State*, 383 S.W.3d 747, 757 (Tex.App.--Houston [14th Dist.] 2012, no pet.)("Appellant has not carried his burden of rebutting the presumption that counsel's [failure to object to leading questions] might be considered sound trial strategy. The record is silent as to why counsel did not make these objections, and we may not speculate on this issue."); *Malone v. State*, 935 S.W.2d 433, 440 (Tex.App.--Tyler 1996, no pet.)(holding that defendant failed to establish that defense counsel's failure to object to leading questions constituted ineffective assistance when he did "not explain how this omission hurt his case or fell below an objective standard of reasonableness"); *Ervine v. State*, 08-00-00129-CR, 2002 WL 595044, at *4 (Tex.App.--El Paso Apr. 18, 2002, no pet.)(not designated for publication)(noting failure to overcome presumption for claims that trial counsel did not object to leading questions).

### *Hearsay*

Appellant argues that trial counsel was ineffective for failing to object to "inflammatory hearsay," by which she means testimony about her own non-custodial statements to the police. Detective Gonzalez testified that during his interview with Appellant she said "You know what? If I really wanted to hurt him, I could have hurt him very easily. You know, I'm much stronger than him."

Hearsay is defined as a statement, other than one made by the declarant while testifying at trial or a hearing, offered to prove the truth of the matter asserted. TEX.R.EVID. 801(d). However,

12

a statement is not hearsay if it is offered against a party and is the party's own statement. *Id.* at 801(e)(2)(A). The Court of Criminal Appeals has concluded that Rule 801(e)(2)(A) "plainly and unequivocally states that a criminal defendant's own statements, when being offered against him, are not hearsay." *Trevino v. State*, 991 S.W.2d 849, 853 (Tex.Crim.App. 1999). Such statements "are admissible on the logic that a party is estopped from challenging the fundamental reliability or trustworthiness of his own statements." *Id.* at 853. *Trevino* has often been cited to exclude from the hearsay rule a criminal defendant's own statements. *E.g. Alcala v. State*, 476 S.W.3d 1, 23 (Tex.App.--Corpus Christi 2013, pet ref'd); *Keith v. State*, 384 S.W.3d 452, 459 (Tex.App.--Eastland 2012, pet. ref'd); *Franco v. State*, 08-15-00254-CR, 2017 WL 972165, at *2 (Tex.App.--El Paso Mar. 14, 2017, no pet.)(not designated for publication); *Taylor v. State*, 08–02–00250–CR, 2004 WL 258139, at *3 (Tex.App.--El Paso Feb. 12, 2004, pet. ref'd)(not designated for publication). We would not find trial counsel deficient for failing to raise an improper objection. *Ex Parte Jimenez*, 364 S.W.3d 886, 887 n. 71 (Tex.Crim.App. 2012)(collecting cases); *Ex parte White*, 160 S.W.3d 46, 53 (Tex.Crim.App. 2004). In any event, Appellant has not demonstrated that trial counsel decided not to object for strategic reasons. *See Thompson*, 9 S.W.3d at 814 (holding presumption of strategy not rebutted when record was "silent as to why appellant's trial counsel failed to object to the State's persistent attempts to elicit inadmissible hearsay").

### *Photographic Evidence*

Appellant next claims that trial counsel allowed photographs into evidence that were not properly authenticated. From our review of the record, however, the sponsoring witness authenticated the photographs. When the police first interviewed Jeffrey at the ER, their camera malfunctioned and the pictures they took were either not saved, or would not download. They asked Jeffrey to come to the police station the next morning, at which time they took the

13

photographs admitted at trial. The investigating officer testified that the photographs accurately depicted what they purport to be. The jury was clearly informed of the circumstances of when the photos were taken, and how the first series of photos failed. We find no deficient performance by counsel in this regard.

### *Lay Opinion*

Appellant contends that trial counsel failed to object to a detective's testimony that Appellant could have crushed Jeffrey's windpipe. The officer testified as follows:

> [STATE'S PROSECUTOR]: So my question is, would putting pressure on someone's neck, is that sufficient to cause serious bodily injury, or bodily injury, in your experience?
>
> [DET. GONZALEZ]: Yes. We've had -- well, me, personally, I've had several cases of impeding breath where it wasn't actually, like, a choking like this, like a strategy, both hands, whatever, it's just like the forearm, where they press, pressure maybe just on one side and they're unable to breathe. I've had several of those cases. It didn't appear -- this to be the case, even though that's what she told me. But I have had those cases.
>
> [STATE'S PROSECUTOR]: Okay. It could possibly crush your trachea?
>
> [DET. GONZALEZ]: Oh, yeah.
>
> [STATE'S PROSECUTOR]: Cut off your blood circulation?
>
> [DET. GONZALEZ]: Oh, yeah.

Under TEX.R.EVID. 701, a lay witness may offer opinion testimony so long as the opinion is drawn from his or her own experiences or observations, and is helpful to the jury. *Id*; *Fairow v. State*, 943 S.W.2d 895, 898-901 (Tex.Crim.App. 1997). Detective Gonzalez's testimony grew out of his own experience and perception. The testimony was arguably helpful in determining a fact in issue, i.e., whether Appellant's actions impeded Jeffrey's normal breathing or caused bodily injury. Counsel was not deficient for failing to object to proper testimony. *Ex Parte Jimenez*, 364 S.W.3d at 887 n. 71; *Ex parte White*, 160 S.W.3d at 53.

14

And even if the admissibility of this statement is arguable, we are reminded that the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *See Robertson v. State*, 187 S.W.3d 475, 483 (Tex.Crim.App.2006). "[I]solated instances in the record reflecting errors of omission or commission do not render counsel's performance ineffective, nor can ineffective assistance of counsel be established by isolating one portion of trial counsel's performance for examination." *McFarland v. State,* 845 S.W.2d 824, 843 (Tex.Crim.App. 1992), *overruled on other grounds by Bingham v. State,* 915 S.W.2d 9 (Tex.Crim.App. 1994)(en banc).

### *Text Messages*

Appellant next complains that her counsel allowed the prosecutor to read text messages to the jury. The messages were contained in an exhibit that the State admitted into evidence through Jeffrey. Once admitted, the prosecutor read some of the messages, and asked Jeffrey about them. The manner of presenting documentary evidence to a jury is left to the trial court's discretion. *Wheatfall v. State*, 882 S.W.2d 829, 838 (Tex.Crim.App. 1994). Appellant offers no authority to suggest that publishing the admitted exhibit to the jury was improper. As such, she has failed to show either that her trial counsel erred, or if so, that the failure to object was not part of a trial strategy. Appellant has failed to demonstrate any deficient performance in this regard.

### *Questions about Skin Cancer*

The prosecuting attorney asked Jeffrey about his pre-existing medical conditions. The question was asked in the context of explaining how Appellant could have overpowered Jeffrey. In response, Jeffrey disclosed an enlarged prostrate, two herniated discs in his back, and a prior diagnosis of skin cancer. Appellant's counsel on cross-examination attempted to suggest that the skin cancer might explain some of the markings on Jeffrey's head and neck because some pre-

15

cancerous cells had been removed.  Accordingly, counsel could have made a strategic decision not to exclude the matter.  We find no proof of deficient performance in this regard.

### Extraneous Conduct

Appellant claims her trial lawyers' "most glaring" failure was allowing evidence of extraneous bad acts.  What the record actually shows is that the trial judge diligently sought to avoid admitting such matters.  While Jeffrey described the events of that evening, he gratuitously stated his belief that things were "getting ready to get violent again."  The trial court immediately called counsel to the bench and verified that the State had instructed Jeffrey not to get into prior extraneous events before the jury.  The State's attorney assured the court that it had.

At another point in the trial when Appellant's prior sworn statement was read to the jury, the question was asked if this was the "first time."  From the sequencing of the prior questions, however, it is unclear what the question was even asking.[1]  Nonetheless, the trial court immediately called counsel to the bench and expressed her concern that the question might open the door to extraneous events.  Yet no other mention of extraneous events was admitted during trial, and the two possible references are either innocuous or ambiguous.  Counsel could have certainly made the strategic decision to forego an objection that might only have highlighted the testimony to the jury.  Appellant has therefore not overcome the presumption of trial strategy.

### Demonstration of the Attack

While testifying about the attack, the State's attorney had Jeffrey step out of the witness box to demonstrate how the assault took place.  The State's attorney played the role of the person

---

[1]  Following a series of questions about the incident in the apartment, the following exchange was read to the jury:

Question:  Okay.  When you walked out, what did you proceed to do?
Answer:  I got up under the truck and I got my baby's sippy cups that his dad threw.
Question:  And this is the first time --you've been married for five years.  Correct?
[Answer]:  Yes, ma'am.

assaulted, and Jeffrey demonstrated what Appellant did during the attack. As they did so, the prosecutor asked Jeffrey to explain the events and detail the positions of the bodies. The entire demonstration covers two and one half pages of the record. Appellant now urges that counsel should have objected to the "exaggerated" demonstration.

The trial court has the discretion to allow relevant in-court demonstrations that are substantially similar to the event they seek to illustrate. *See Valdez v. State*, 776 S.W.2d 162, 168 (Tex.Crim.App. 1989); *Cantu v. State*, 738 S.W.2d 249, 255 (Tex.Crim.App. 1987); *Henricks v. State*, 293 S.W.3d 267, 277 (Tex.App.--Eastland 2009, pet. ref'd); *Wright v. State*, 178 S.W.3d 905, 919 (Tex.App.--Houston [14th Dist.] 2005, pet. ref'd). The conditions of the demonstration should be sufficiently similar to the event in question, but need not be identical, and dissimilarities go to weight and not to admissibility. *Valdez*, 776 S.W.2d at 168; *Cantu*, 738 S.W.2d at 255; *Wright*, 178 S.W.3d at 919. Nothing in our records shows the demonstration fails this standard. Without that showing, Appellant cannot show that trial counsel was deficient for not objecting to the demonstration.

### *Protective Order Transcript*

After the assault, Jeffrey filed for divorce. In the divorce proceeding, the court heard a motion for protective order in which both Jeffrey and Appellant testified. The State moved to admit a redacted transcript of Appellant's testimony. After the trial court provided the parties time to ensure that they redacted any references to extraneous events, the exhibit was admitted without objection. In return, Appellant's attorneys offered Jeffrey's transcribed testimony from the same hearing as an exhibit.

In summary fashion, Appellant contends that the use of the transcript was "highly objectionable and harmful." She explains neither claim. A transcript of Appellant's own

17

testimony is defined out of the hearsay rule. TEX.R.EVID. 801(e)(2); *Trevino,* 991 S.W.2d at 853. Once admitted into evidence, the prosecutor read the questions and answers to the jury. The trial court has discretion to control how counsel may publish an admitted exhibit to the jury. *Wheatfall*, 882 S.W.2d at 838 (holding there was no abuse of discretion in allowing prosecutor to read aloud portions of pen packets and probation records that had already been admitted). Even if some argument could have been made to restrict that manner of publication, Appellant's counsel might have decided that the testimony helped the case and made a strategic decision to not object. Nothing in the record shows otherwise.

### *Jury Charge*

In the charge conference, and while making objections, one of Appellant's attorneys stated that he had "barely looked at it right now." Appellant seizes on this statement to urge that counsel failed to preserve charge error. The statement by counsel is ambiguous at best. The record is not clear what the "it" was that counsel was referring to (The charge itself? The apparent danger instruction that counsel had just addressed? Some other issue?). Further, Appellant fails to point us to any error in the charge that was not preserved. Without any explanation of what counsel meant, or any indication that there is some flaw in the charge, Appellant has failed to show her counsel deficient.

### *Mitigation Evidence*

Next, Appellant contends that trial counsel did not present sufficient mitigation punishment evidence. Appellant testified on her on behalf in the punishment phase. She was assessed a one year sentence, that was suspended in favor of community supervision. She fails to inform us, however, what additional evidence she might have presented. That failure is fatal to her claim here. *Cf. Perez v. State*, 310 S.W.3d 890, 896 (Tex.Crim.App. 2010)(noting a failure by counsel

to investigate a case prejudices a defendant only if the reviewing court is provided the evidence the jury did *not* hear due to trial counsel's failure to investigate); *Merjil v. State*, No. 08-13-00351-CR, 2016 WL 617725 at *5 (Tex.App.--El Paso, February 16, 2016, no pet.)(mem. op.)(not designated for publication)(trial counsel was not ineffective for failing to offer mitigation evidence when defendant offered no indication of what additional evidence might have been offered). Appellant has made no showing that any additional witness or testimony would have aided her case. This failing undercuts any chance to meet her burden under both *Strickland* elements.

### *Waiver of Jury Sentencing*

Prior to trial, Appellant elected to have the jury assess punishment. After the jury returned a guilty verdict, her attorney changed that election and announced in open court that the court should assess the sentence. Appellant was present when the change of election was announced. The judge assessed a one year sentence, but suspended the sentence and placed Appellant on two years of community supervision. Appellant was also assessed a $2,000 fine. The record is devoid of any discussion of why the election was changed. The record also fails to show whether it was based on counsels' advice, or Appellant's own choice, much less whether a jury would have assessed a lighter sentence. Again, Appellant has wholly failed to meet her burden under the deficient performance standard.[2]

### **No Prejudice Shown**

The second *Strickland* prong requires Appellant to show any deficient performance prejudiced her. Because we have concluded that the claimed trial counsel errors were either not

---

[2] In cursory fashion, Appellant also contends the cumulative effect of these errors require reversal. (antbrf20) But the sum of many nothings is still nothing and we find that none of the alleged failings, either singularly or collectively, constitute deficient performance.

errors, or did not meet the deficiency standard in *Strickland*, we necessarily conclude she has not met the burden to prove prejudice.

We overrule Issue One and Two and affirm the judgment of conviction below.

October 12, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.

(Do Not Publish)

20