

# NUMBER 13-22-00013-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

VALENTIN TORRES ALVAREZ A/K/A
VALENTIN TORRES A/K/A
VALENTIN ALVAREZ TORRES,                                   Appellant,

v.

THE STATE OF TEXAS,                                        Appellee.

On appeal from the 103rd District Court
of Cameron County, Texas.

# MEMORANDUM OPINION

Before Justices Benavides, Hinojosa, and Silva
Memorandum Opinion by Justice Silva

Appellant Valentin Torres Alvarez a/k/a Valentin Torres a/k/a Valentin Alvarez Torres appeals his convictions for continuous sexual abuse of a child, a first-degree felony, and prohibited sexual conduct, a third-degree felony. *See* TEX. PENAL CODE ANN.

§§ 21.02, 25.02(c). By two issues, appellant asserts he was denied effective assistance of counsel, and the jury charge allowed for a non-unanimous verdict. We affirm.

## I.     BACKGROUND

On November 15, 2017, appellant was indicted on one count of continuous sexual abuse of a child, occurring on or about July 1, 2009, through November 1, 2010, and two counts of prohibited sexual conduct, occurring on or about November 1, 2016, and November 3, 2016, respectively.

At trial, the complainant, appellant's stepdaughter Valerie,[1] testified that appellant began dating her mother, Sonia, when Valerie was around seven years old. When Valerie turned twelve, appellant reportedly began "look[ing] at [her] different[ly]." Valerie testified that one afternoon after school, while her little sister was in another room and her mother was at work, appellant came into her bedroom and instructed her to take off her clothes. Valerie testified that appellant penetrated her vaginally, and appellant stopped when they were "interrupted" by the sound of someone knocking outside her bedroom window. Appellant retreated to the hallway bathroom, and Valerie opened the front door, where she was greeted by her godmother, Rosa Elia De Los Santos. When De Los Santos pressed as to why Valerie had taken so long to answer the door and why she was answering the door while "zipping up [her] pants," Valerie lied.[2]

---

[1] Valerie was twenty years old at the time of trial. We refer to the complainant and her family members by pseudonyms in accordance with the rules of appellate procedure. *See* TEX. R. APP. P. 9.8(b)(2), cmt.

[2] De Los Santos testified that she had been knocking on the front door and various windows outside the residence for "[a] good fifteen, twenty minutes" before Valerie opened the front door looking disheveled. De Los Santos testified, "[Valerie's] hair was kind of messed up . . . and then I looked down and [saw Valerie's] pants were unzipped, they were unbuttoned." Once inside the home, De Los Santos attempted

2

Valerie testified that the sexual abuse spanned several years, often occurring in the summertime when appellant stayed home with Valerie and her sister, and continued until November 2016, a few weeks shy of Valerie's nineteenth birthday. In early July 2017, Sonia took Valerie to a doctor in Mexico after Sonia became concerned with Valerie's excessive weight gain. Valerie testified that appellant had also commented on her weight, telling her that "he didn't like the stomach that he was seeing." At the doctor's appointment, Sonia learned that Valerie was eight months pregnant. Valerie gave birth several weeks later, and DNA testing results admitted at trial indicated appellant was the father.[3]

Throughout Valerie's testimony, appellant's trial counsel raised several objections. On cross-examination, counsel questioned Valerie about her past romantic partners. Valerie testified that she had only ever dated one boy, he was the same age as her, they were together for two and a half years in high school, and they were never sexually active.[4] Valerie was further asked to recall the location of each testified-to incident of sexual abuse and to the whereabouts of other household members during each incident.

Sonia testified that she contacted law enforcement the same day she found out Valerie was pregnant and learned about the sexual abuse. Sonia then called appellant,

to speak with appellant, who had locked himself in his bedroom. Feeling as if "something was wrong," De Los Santos took the girls out to get snow cones. De Los Santos testified that later she attempted to elicit information from Valerie to no avail.

[3] The State's DNA expert testified in relevant part, as follows: "[W]e determined that the probability of paternity that Valentin Alvarez is the father was 99.9999999999 percent, and that is at least that much. It actually is greater than that, but our statistical program stops the nines at a certain number."

[4] Valerie's high school boyfriend also testified at trial. He stated that the two had a limited physical relationship and had only ever held hands and kissed. He ended the relationship after he learned she was pregnant via social media, and he had not spoken to Valerie since.

who had been out of town, to tell him that she would not allow him back in the home. At trial, Sonia recalled the incident in 2012, as it had been relayed to her at the time by De Los Santos. The disclosure had prompted Sonia to request an explanation from appellant, who denied anything inappropriate had transpired. Throughout Sonia's testimony, appellant's trial counsel repeatedly objected to narrative, hearsay, and on "improper bolstering" grounds.

Forensic nurse examiner Elizabeth Blancher testified that she examined Valerie in July 2017 following the initiation of the police investigation. Blancher described Valerie as a "good historian" who was calm and cooperative but appeared "naïve . . . for her age." Blancher noted that Valerie's last reported incident of sexual abuse was consistent with the gestational age of the baby at the time of the examination. Blancher's written report indicated she observed Valerie had "two well-healed tears to the hymen" but noted that there would be "no way to know exactly how old" Valerie's injuries were.

Rosalinda Hernandez, an investigator with the Cameron County Sherriff's Office, testified that she separately interviewed Valerie, Sonia, and Valerie's then-boyfriend. Investigator Hernandez described both Valerie and her then-boyfriend as "very naïve" and felt as if she had been "talking to a child." Investigator Hernandez testified that she also contacted appellant, and although he initially agreed to provide an in-person statement, he failed to appear and changed his number shortly thereafter. Investigator Hernandez obtained appellant's new number and attempted to make contact again but was unsuccessful.

Appellant testified at trial. He denied having any sexual relationship with Valerie and suggested that Sonia impregnated Valerie using semen obtained from his underwear. Appellant's trial counsel also recalled Valerie to question her about inconsistencies in her prior testimony, wherein she had testified there had been no incidents of oral penetration, with Valerie's statement to law enforcement indicating otherwise.

The jury returned with a guilty verdict on all three counts, and the trial court assessed appellant's punishment at fifty years' imprisonment for count one and ten years' imprisonment for counts two and three.

On December 8, 2021, the Texas Court of Criminal Appeals granted appellant's request for an out-of-time appeal. *Ex parte Alvarez*, No. WR-93,274-01, 2021 WL 5823029, at *1 (Tex. Crim. App. Dec. 8, 2021). This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In issue one, appellant claims that his counsel was (1) "physically unfit to defend a felony case," and her "physical incapacities" resulted in her failure to (2) investigate and prepare, (3) request a *Daubert* hearing, (4) present character witnesses, (5) object to the State's list of extraneous offenses, (6) retain an expert for the defense, (7) make an opening statement, and (8) object to hearsay and summary testimony.

## A. Standard of Review and Applicable Law

To reverse a conviction based on ineffective assistance of counsel, we must find: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the defendant was prejudiced. *Andrus v. Texas*, 140 S. Ct. 1875, 1881 (2020) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)); *Swinney v. State*, No. PD-0216-

21, 2022 WL 610977, at *1 (Tex. Crim. App. Mar. 2, 2022). "Prejudice may be measured in one of two ways: a reasonable probability of a different outcome or a reasonable probability of a different decision by the defendant." *Swinney*, 2022 WL 610977, at *1. "The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011).

Any claim for ineffectiveness of counsel "must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017) (citations omitted). "[I]f the record does not contain affirmative evidence of trial counsel's reasoning or strategy, we presume counsel's performance was not deficient." *Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021). A defendant's inability to make a showing under either *Strickland* prong defeats a claim for ineffective assistance. *Id.* at 587.

## B.    Analysis

We note at the outset that appellant did not file a motion for new trial raising the issue of ineffective assistance of counsel based on the claims made here; therefore, we have no record detailing counsel's reasoning behind her actions or inactions. *See id.* at 586.

### 1.    "Physically [U]nfit"

To prevail on a claim of ineffectiveness based on a trial counsel's illness or injury, appellant would need to show that the trial counsel's illness or injury was a factor in trial counsel's deficient representation. *See Prine*, 537 S.W.3d at 117; *Burnett v. State*, 784 S.W.2d 510, 515 (Tex. App.—Dallas 1990, pet. ref'd).

Counsel was appointed to represent appellant on December 15, 2017. The first mention of any physical limitation of counsel or illness in the record occurred on June 4, 2018, on the morning of trial. During voir dire,[5] appellant's trial counsel informed the venire panel that she was recovering "from having [her] foot and ankle totally rebuilt," and she was, therefore, unable to stand for prolonged periods of time. Counsel then proceeded to engage with venire members, calling on them individually by name, as she spoke of the presumption of innocence, her client's right not to testify, and possible motivations behind false outcries of abuse. Counsel's questioning ultimately prompted several disclosures of bias against the appellant. Trial proceedings continued without incident.

On the morning of the second day of trial and outside the presence of the jury, the trial court granted trial counsel's request to recess at 3:45 p.m. because counsel had a doctor's appointment scheduled. Counsel additionally notified the trial court that she had fallen the night before and had a "giant knot on [her] head." The court replied, "Well, the good thing is, your bangs are covering it." Trial resumed, and throughout the day, appellant's trial counsel cross-examined each State witness—as observed *supra*. After the State rested, appellant's trial counsel made an oral motion for a directed verdict, which

---

[5] Prior to the start of voir dire, appellant's trial counsel privately conferred with appellant and with the assistance of an interpreter, reiterated the State's plea bargain offer. Counsel confirmed she had spoken with appellant at length in preparation for trial but requested an interpreter to ensure there would be "no miscommunication." Appellant was admonished on the record regarding the punishment range of each count and the terms of the State's plea bargain offer. Although appellant made it known that he wished for the trial court to assess punishment should he be found guilty of the indicted offenses, the trial court advised trial counsel to consider submitting a written request for the jury to assess punishment should appellant later change his mind. *See* TEX. CODE CRIM. PROC. ANN. art. 37.07 § 2(b)(2) (jury election as to punishment). Appellant's trial counsel submitted the hand-written motion at trial.

was denied. Prior to appellant's testimony, appellant's trial counsel waived the opportunity to make an opening statement, stating that she "prefer[ed] to skip it, just get into it."

Appellant's trial counsel recalled Valerie to testify the next day, and closing arguments followed. During closing arguments, appellant's trial counsel focused on the discrepancies in Valerie's testimony, Sonia's motivation to lie, and questioned the reliability of the DNA results given that the jury did not hear any testimony about the "methodology used" or "safe[]guards" in place.

In a post-trial motion requesting payment, appellant's trial counsel included an itemized list of in-court and out-of-court work conducted on the case. Counsel indicated that she had spent approximately 125 hours out-of-court, between January 6, 2018, and June 6, 2018, working on this case, which included spending an excess of sixteen hours reviewing discovery materials and over twenty-five hours conducting trial preparation—not inclusive of time spent conducting case research, motion drafting, conferencing with appellant, or consulting with an "expert".

The record supports a conclusion that appellant's trial counsel conducted extensive voir dire and cross-examination of all the witnesses, made timely objections, introduced evidence, and exhibited an in-depth knowledge and understanding of the facts and circumstances surrounding appellant's case. *See Prine*, 537 S.W.3d at 117. To the extent that appellant argues trial counsel's physical infirmities in and of themselves constitute deficient performance, we reject such contention. *See, e.g., Aldrich v. State*, 296 S.W.3d 225, 250 (Tex. App.—Fort Worth 2009, pet. ref'd) ("Although the record supports the conclusions that defense counsel was hard of hearing, that defense

8

counsel's speech was difficult to hear, and that defense counsel became confused at points during the trial, these facts in and of themselves do not constitute deficient performance."). For reasons discussed below, we likewise conclude that nothing in the record indicates trial counsel's illness affected her ability to render effective assistance. *See id.*; *Malone v. State*, 935 S.W.2d 433, 441 (Tex. App.—Tyler 1996, no pet.); *see also Tucker v. State*, No. 02-15-00363-CR, 2016 WL 7405802, at *2, *9 (Tex. App.—Fort Worth Dec. 22, 2016, pet. ref'd) (mem. op., not designated for publication) (concluding record did not support appellant's thirteen-issue claim of deficient performance premised on counsel's "suffering from serious medical problems").

### 2. "Failure to Investigate and Prepare"

By appellant's second sub-issue, entitled "Failure to Investigate and Prepare," appellant provides case law concerning trial counsel's duty to make reasonable investigations. *See generally Hinton v. Alabama*, 571 U.S. 263, 274 (2014) ("[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." (quoting *Strickland*, 466 U.S. at 691)); *Cueva v. State*, 339 S.W.3d 839, 860–61 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) ("When assessing the reasonableness of an attorney's investigation, a reviewing court must consider the quantum of evidence already known to counsel and whether the known evidence would lead a reasonable attorney to investigate further." (citing *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006))). However, this sub-issue contains no explanatory argument. *See Young v. State*, 591 S.W.3d 579, 607 (Tex. App.—Austin 2019, pet. ref'd) ("[A] claim 'based on trial counsel's general failure to

9

investigate' will fail in the absence of 'a showing of what an investigation would have revealed that reasonably could have changed the result of the case.'" (quoting *Straight v. State*, 515 S.W.3d 553, 568 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd))); *see also Curcuru v. State*, No. 13-08-00734-CR, 2010 WL 5020178, at *12 (Tex. App.—Corpus Christi–Edinburg Dec. 9, 2010, no pet.) (mem. op., not designated for publication) (reviewing appellant's ineffective assistance of counsel claim premised on "[g]eneral unpreparedness" where appellant alleged that counsel only began to call potential witnesses on the Sunday before the Monday start of jury trial). Appellant does not state with any particularity what it was that his trial counsel failed to investigate or prepare or what action or inaction resulted from an alleged failure to investigate or prepare; this sub-issue is also without citations to the record. *See* TEX. R. APP. P. 38.1(i) (briefing requirements); *see also Longoria v. State*, No. 13-12-00226-CR, 2013 WL 5675913, at *4 (Tex. App.—Corpus Christi–Edinburg Oct. 17, 2013, no pet.) (mem. op., not designated for publication) ("[I]t is Longoria's duty to identify counsel's errors with record citations and to provide supporting arguments in his brief.").

Accordingly, we conclude this sub-issue has been inadequately briefed. *See Cueva*, 339 S.W.3d at 881 n.19 (concluding appellant's ineffective assistance of counsel argument was inadequately briefed, and therefore, waived, where appellant "provides no explanatory argument for these contentions"); *see also Amador v. State*, No. 13-19-00562-CR, 2021 WL 5456661, at *10 (Tex. App.—Corpus Christi–Edinburg Nov. 23, 2021, pet. ref'd) (mem. op., not designated for publication) (same).

10

### 3. "Failure to request Daubert hearings on State's listed motions"

Appellant next argues that he received ineffective assistance of counsel because his trial counsel failed to seek a *Daubert* hearing to challenge the reliability of the State's expert witnesses. *See Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 590 (1993) (establishing the criteria for the admissibility of expert testimony); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex. Crim. App. 1992).

Trial judges act "as a gatekeeper to determine the reliability, relevancy, and admissibility of scientific evidence." *Wells v. State*, 611 S.W.3d 396, 426 (Tex. Crim. App. 2020). "In *Daubert*, the United States Supreme Court held that when the subject of the expert's testimony is 'scientific knowledge,' the basis of his testimony must be grounded in the accepted methods and procedures of science." *See Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010) (quoting *Daubert*, 509 U.S. at 589–90); *see generally Morris v. State*, 361 S.W.3d 649, 655 (Tex. Crim. App. 2011) (noting, in context of *Daubert* hearings, that "[t]rial courts are not required to re-invent the scientific wheel in every trial").

Here, the State's "Disclosure of Expert Witnesses" identified six individuals it intended to call at trial: two sexual assault nurse examiners, two forensic analysts, a DNA Diagnostics Center assistant laboratory director, and a computer forensics criminal investigator. However, it is unclear which of the State's experts appellant believes should have been challenged, on what basis, or what the effect of such a motion might have been. Further, appellant does not provide us with any evidence of the reasoning behind trial counsel's conduct, and conjecture cannot overcome the presumption that trial

counsel's conduct was reasonable.[6] *See Johnson*, 624 S.W.3d at 586; *see, e.g.*, *Washington v. State*, 417 S.W.3d 713, 725 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (concluding appellant's trial counsel's failure to challenge the State's expert witnesses' qualifications did not constitute ineffective assistance of counsel); *Stephens v. State*, 276 S.W.3d 148, 154 (Tex. App.—Amarillo 2008, pet. ref'd) (concluding appellant's trial counsel's failure to object to or to request a *Daubert* hearing on an expert witness did not constitute ineffective assistance of counsel); *see also Kennedy v. State*, No. 13-15-00457-CR, 2016 WL 4145939, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 4, 2016, pet. ref'd) (mem. op., not designated for publication) (same); *Young v. State*, No. 01-04-00155-CR, 2005 WL 3494949, at *8 (Tex. App.—Houston [1st Dist.] Dec. 22, 2005, no pet.) (mem. op., not designated for publication) (same). Therefore, appellant has not met his burden to show that his trial counsel rendered ineffective assistance when she did not request a *Daubert* hearing with regard to these six expert witnesses.

### 4. "Failure to investigate and present character witnesses"

By his fourth sub-issue, appellant argues his trial counsel should have presented "character witnesses on the issue of whether [he] had a reputation for acting appropriately with children or whether the complaining witness was credible."

The decision of whether to present character witnesses is a matter of trial strategy. *Martinez v. State*, 449 S.W.3d 193, 209 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Where, as here, we are without evidence to the contrary, we presume counsel's decision

---

[6] We additionally observe that at trial, after the State laid the predicate for its expert witness testimony, appellant's trial counsel questioned each expert witness as to their respective qualifications and the validity of the methodology relied upon.

was based on sound strategy. *See Johnson*, 624 S.W.3d at 586. Moreover, having been presented with an underdeveloped record, we are unaware of whether any character evidence favorable to appellant even exists—appellant did not provide names of possible witness, what they would be able to testify to, or whether they would have been available to testify. *See Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) ("[F]ailure to call witnesses at the guilt-innocence and punishment stages is irrelevant absent a showing that such witnesses were available and appellant would benefit from their testimony." (quoting *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983))); *Rangel v. State*, 972 S.W.2d 827, 835–36 (Tex. App.—Corpus Christi–Edinburg 1998, pet. ref'd); *see also Gonzalez v. State*, No. 01-12-01115-CR, 2014 WL 7205145, at *8–9 (Tex. App.—Houston [1st Dist.] Dec. 18, 2014, pet. ref'd) (mem. op., not designated for publication) (concluding appellant did not show prejudice where he failed to show character witnesses had been available to testify and concluding that character testimony would be unlikely to affect punishment given the strength of the evidence); *Sosa v. State*, No. 13-12-00764-CR, 2015 WL 7352310, at *13 (Tex. App.—Corpus Christi–Edinburg Nov. 19, 2015, no pet.) (mem. op., not designated for publication) ("Sosa has failed to rebut the presumption that his trial attorney adequately sought character witnesses and pursued a reasonable trial strategy with the witnesses he chose to present at trial and those he chose not to call."). Appellant did not rebut the presumption or make a showing of prejudice regarding sub-issue four.

13

**5.** "**Failure to object to State's list of extraneous offenses**"

Appellant additionally asserts that "[t]he State filed an intention to use sixteen extraneous offenses[7] and [his trial counsel] never filed objections although all were objectionable under the [Texas] Rules of Evidence." Appellant does not point to a single instance wherein one of the listed extraneous offenses was mentioned at trial, and having reviewed the record, we find none. Accordingly, even if we were to presume counsel acted deficiently in this instance, appellant has not demonstrated that he was prejudiced by counsel's inaction. *See Johnson*, 624 S.W.3d at 586.

**6.** "**Failure to develop appropriate expert testimony for the defense**"

By his sixth sub-issue, appellant complains of his trial counsel's decision to proceed to trial without obtaining an expert to testify to memory processes, the reliability of memory retrieval, and false memory implantation.

"[S]trategic decisions—including whether to hire an expert—are entitled to a 'strong presumption' of reasonableness." *Dunn v. Reeves*, 141 S. Ct. 2405, 2410–11, (2021) (quoting *Harrington*, 562 U.S. at 104). "Such decisions are particularly difficult because certain tactics carry the risk of 'harm[ing] the defense' by undermining credibility with the jury . . . ." *Id.*; *see Ex parte Flores*, 387 S.W.3d 626, 636 (Tex. Crim. App. 2012) (determining trial counsel's duty is not to find the "best" or most qualified expert but, instead, their duty "is to investigate the facts of the case and determine if an expert is necessary to present the defendant's case to the jury"). The record neither establishes counsel's reasoning for not obtaining an expert to speak to these matters nor does it

---

[7] The document appellant refers to lists six extraneous offenses.

establish that any particular expert was ready and able to testify or to what effect, if any, the testimony would have had on the trial. *See Johnson*, 624 S.W.3d at 586; *see, e.g.*, *Ryder v. State*, 514 S.W.3d 391, 405 (Tex. App.—Amarillo 2017, pet. ref'd) (concluding that counsel was not ineffective in declining to utilize the services of an expert to testify "in support of the defensive theory that the children's allegations against appellant were mistakes, creations, or fabrications" because appellant made no showing that there was a "reasonable probability the result of the trial would have been different"); *see also* *Trevino v. State*, No. 13-11-00709-CR, 2013 WL 3518200, at *5, *8 (Tex. App.—Corpus Christi–Edinburg July 11, 2013, pet. ref'd) (mem. op., not designated for publication) (reviewing appellant's contention that "counsel should have called an expert witness to present scientific literature regarding the potential for children to be manipulated by adults into giving false testimony," and concluding "the record does not establish that any particular expert 'was ready and able' to testify that the accusations of [the complainants] may have been false due to 'implantation,' 'contamination,' or other undue influence by adults"); *Curcuru*, 2010 WL 5020178, at *15 ("With regard to Curcuru's assertion that trial counsel was deficient because he had advance notice of all of the State's expert testimony but chose to not call a competing expert, we conclude that the record is silent as to trial counsel's decision-making and trial strategy, and Curcuru has failed to rebut the presumption that trial counsel provided reasonably professional assistance with regard to his expert witness decisions."). Therefore, we defer to trial counsel's decision-making and the presumption stands. *See Johnson*, 624 S.W.3d at 586.

15

### 7. "Waiver of opening statement"

Appellant next avers that his trial counsel was ineffective because she declined to deliver an opening statement.

The decision to deliver or not deliver an opening statement is "entirely optional" and "inherently tactical." *See Darkins v. State*, 430 S.W.3d 559, 570 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.01(b) ("The defendant's counsel *may* make the opening statement for the defendant immediately after the attorney representing the State makes the opening statement for the State.") (emphasis added). Trial counsel explicitly refused the option to provide an opening statement, and there is nothing in the record to indicate that counsel's decision was anything but strategic. *See Johnson*, 624 S.W.3d at 586; *see also McMahon v. State*, No. 02-19-00144-CR, 2020 WL 579103, at *7 (Tex. App.—Fort Worth Feb. 6, 2020, pet. ref'd) (mem. op., not designated for publication) (concluding trial counsel's decision to not provide an opening statement was not ineffective assistance of counsel); *Clark v. State*, No. 13-17-00332-CR, 2018 WL 3913096, at *3 (Tex. App.—Corpus Christi–Edinburg Aug. 16, 2018, pet. ref'd) (mem. op., not designated for publication) (same); *Touchette v. State*, No. 13-17-00270-CR, 2018 WL 4087744, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2018, pet. ref'd) (mem. op., not designated for publication) (same). Therefore, appellant has failed to rebut the presumption that trial counsel acted reasonably.

### 8. Failure to object to harmful hearsay or summary testimony

According to appellant, trial counsel provided ineffective assistance of counsel by failing to object to hearsay in two instances: when an officer testified regarding the substance of a telephone exchange between Sonia and appellant, and when Investigator Hernandez testified "about harmful hearsay from [Valerie]."

In *Lopez*, the Texas Court of Criminal Appeals analyzed whether trial counsel was ineffective in failing to object to "the testimonies of at least two outcry witnesses,"— testimony which the court recognized "constituted inadmissible hearsay and were improper bolstering of [the complainant's] testimony, serving solely to enhance [the complainant's] credibility." *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011). Observing that "claims of ineffective assistance of counsel are generally not successful on direct appeal," the court found it detrimental to appellant's position that the record was "silent as to why trial counsel failed to object." *Id.* at 143–44. The court concluded appellant "failed to meet his burden under the first prong of *Strickland*," and "[b]ecause appellant failed to meet his burden on the first prong of *Strickland,* we need not consider the requirements of the second prong." *Id.* at 144. We now conclude similarly. On the record before us, we must assume that appellant's trial counsel's tactical choice at trial was not to object to hearsay in either instance.[8] *See id.*; *Vega v. State*, 610 S.W.3d 79,

---

[8] Appellant additionally asserts that counsel's cross-examination elicited improper hearsay, but the record citation which accompanies this assertion contains no hearsay. In any matter, the record is silent as to counsel's cross-examination strategy, and we reject appellant's characterization of the cross-examination as deficient. *See Johnson v. State*, 624 S.W.3d 579, 586 (Tex. Crim. App. 2021); *see also Touchette v. State*, No. 13-17-00270-CR, 2018 WL 4087744, at *4 (Tex. App.—Corpus Christi–Edinburg Aug. 28, 2018, pet. ref'd) (mem. op., not designated for publication) ("Again, the record here is silent as to why defense counsel asked Brooks the questions she did. Appellant has failed to prove that counsel's cross-examination of Brooks was not strategic, and we reject this argument.") (internal citations omitted).

84 (Tex. App.—San Antonio 2020, no pet.) (concluding appellant failed to overcome his burden where trial counsel did not object to five witnesses testifying to the complainant's statements and the record contained no evidence as to the trial counsel's rational); *see also Rivera v. State*, No. 13-19-00616-CR, 2021 WL 1567507, at *2–3 (Tex. App.— Corpus Christi–Edinburg Apr. 22, 2021, no pet.) (mem. op., not designated for publication) (same).

Appellant further contends that trial counsel failed to object to the State's use of Investigator Hernandez as "a witness to summarize testimony about which she had no personal knowledge." *See* TEX. R. EVID. 602 (need for personal knowledge). The record provides no guidance as to trial counsel's strategy in failing to object, and without more, we do not speculate or presume that counsel's failure to object was deficient performance. *See Johnson*, 624 S.W.3d at 586; *see also Perez v. State*, No. 13-17-00239CR, 2018 WL 3301911, at *3 (Tex. App.—Corpus Christi–Edinburg July 5, 2018, no pet.) (mem. op., not designated for publication) ("Perez's complaints regarding Torres's lack of personal knowledge and on her relying hearsay statements fail to overcome the presumption of reasonable trial strategy.").

### 9. Summary

"It is not sufficient that the appellant show, with the benefit of hindsight, that his counsel's actions or omissions during trial were merely of questionable competence. Rather, the record must affirmatively demonstrate trial counsel's alleged ineffectiveness." *Johnson*, 624 S.W.3d at 585–86 (quoting *Mata v. State*, 226 S.W.3d 425, 430 (Tex. Crim. App. 2007)). The record is without such affirmative showing here, and thus, appellant fails

to overcome the "strong presumption" that trial counsel's conduct "fell within the wide range of reasonable professional assistance." *See id.* at 586 (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)). We overrule appellant's first issue.

### III.    JURY UNANIMITY

By his second issue, appellant argues that the jury charge was erroneous because it allowed for a non-unanimous verdict on count one. *See* TEX. PENAL CODE ANN. § 2.05(a)(2); *French v. State*, 563 S.W.3d 228, 233 (Tex. Crim. App. 2018) ("A defendant in a criminal trial in Texas has the right to a unanimous jury verdict on each element of the charged offense.").

### A.    Standard of Review and Applicable Law

The purpose of the trial court's jury charge is to instruct the jurors on the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021) (per curiam) (quoting TEX. CODE CRIM. PROC. ANN. art. 36.14). In analyzing an alleged jury charge error, our first duty is to determine whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). If we find error, we then analyze that error for harm. *Id.* "The standard of review for jury-charge error depends on whether the error was preserved." *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020) (citing *Jordan v. State*, 593 S.W.3d 340, 346 (Tex. Crim. App. 2020)); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985).

If there is error and the defendant preserved the alleged error, then we must reverse if we find "some harm." *Jordan*, 593 S.W.3d at 346; *Almanza*, 686 S.W.2d at 171. When the jury charge error is not preserved, the court will reverse only upon a showing

19

of "'egregious harm,' which occurs when the error created such harm that the appellant was deprived of a fair and impartial trial." *Chambers v. State*, 580 S.W.3d 149, 154 (Tex. Crim. App. 2019) (citing *Villarreal v. State*, 453 S.W.3d 429, 433 (Tex. Crim. App. 2015)); *Almanza*, 686 S.W.2d at 171. "Errors that result in egregious harm are those that affect 'the very basis of the case,' 'deprive the defendant of a valuable right,' or 'vitally affect a defensive theory.'" *Gonzalez*, 610 S.W.3d at 27 (quoting *Ngo*, 175 S.W.3d at 743).

The jury charge error alleged here concerns unanimity. A jury must reach a unanimous verdict to convict. *Ramos v. Louisiana*, 140 S. Ct. 1390, 1395 (2020); *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014). "[N]on-unanimity may occur when the State charges one offense and presents evidence that the defendant committed the charged offense on multiple but separate occasions," and the charge fails to properly instruct the jury that its verdict "must be unanimous as to a single offense or unit of prosecution among those presented." *Cosio v. State*, 353 S.W.3d 766, 772 (Tex. Crim. App. 2011). Specifically, to convict a defendant of the offense of continuous sexual abuse of a child, the charge must require that a jury find: (1) the defendant committed two or more acts of sexual abuse during a period of thirty or more days; and (2) at the time of each act of sexual abuse, the defendant was seventeen years of age or older and the complainant was a child younger than fourteen years of age. *See* TEX. PENAL CODE ANN. § 21.02(b); *Price v. State*, 434 S.W.3d 601, 605–06 (Tex. Crim. App. 2014). Section 21.02(d) further provides:

> members of the jury are not required to agree unanimously on which specific acts of sexual abuse were committed by the defendant or the exact date when those acts were committed. The jury must agree unanimously

20

that the defendant, during a period that is 30 or more days in duration, committed two or more acts of sexual abuse.

Tex. Penal Code Ann. § 21.02(d).

## B.     Analysis

On appeal, appellant's argument is twofold: the statute is unconstitutional because it runs afoul of unanimity requirements, and the "the trial court should have added language to the application portion instructing the jury that 'at least two of those acts were separated by at least 30 days.'"[9]

Regarding appellant's first sub-issue, we observe that the constitutionality of § 21.02 has been repeatedly upheld by this Court and our sister courts, and we decline appellant's invitation to revisit our prior holdings. *See Carmichael v. State*, 505 S.W.3d 95, 106 (Tex. App.—San Antonio 2016, pet. ref'd) (re-affirming its prior holding that the statute was constitutional "[b]ecause section 21.02 requires a jury to unanimously agree on the elements of the offense of continuous sexual abuse of a child"); *see also Paez v. State*, No. 13-16-00429-CR, 2018 WL 3910023, at *5 (Tex. App.—Corpus Christi–

---

[9] At trial, the following brief colloquy occurred:

| THE COURT: | [Counsel], do you have any objections to the changes in the charge? |
| [Counsel]: | Yes, I do, [y]our Honor. |
| THE COURT: | What are your objections? |
| [Counsel]: | My objection is the added language violates the Texas Constitution and the United States Constitution in that it doesn't call for a unanimous decision, and we object based on those grounds. |
| THE COURT: | Okay. But that's the law, so that's going to be denied. You can take that up to the Supreme Court, then, that they need to change the law. |

Edinburg Aug. 16, 2018, pet. ref'd) (mem. op., not designated for publication) (acknowledging the same); *Love v. State*, No. 13-16-00552-CR, 2018 WL 460807, at *3 (Tex. App.—Corpus Christi–Edinburg Jan. 18, 2018, pet. ref'd) (mem. op., not designated for publication) (same); *Aguayo v. State*, No. 13-14-00650-CR, 2016 WL 6804455, at *6 (Tex. App.—Corpus Christi–Edinburg Nov. 17, 2016, pet. ref'd) (mem. op., not designated for publication) (same).

Appellant next argues that the jury charge should have included an instruction on unanimity consistent with § 21.02(d). However, the jury charge here stated:

> You are instructed that members of the jury are not required to agree unanimously on which specific acts of sexual abuse, if any, were committed by the defendant or the exact date when those acts were committed, if any. The jury must agree unanimously that the defendant during a period that was 30 or more days in duration, committed two or more acts of sexual abuse as that term has been previously defined.

*See* TEX. PENAL CODE ANN. § 21.02(d); *Price*, 434 S.W.3d at 605–06 (observing that, under § 21.02, "even if the jury lacks unanimity as to each of the particular sexual acts or their time of occurrence, so long as the jury members agree that at least two acts occurred during a period that is thirty or more days in duration," the result is a unanimous verdict); *see also Aguayo*, 2016 WL 6804455, at *6. In other words, the jury *was* properly instructed that it could convict appellant for continuous sexual abuse only if it unanimously found that he committed two predicate acts during a period that was thirty or more days in duration. *See Price*, 434 S.W.3d at 605–06; *see also Ramirez v. State*, No. 13-20-00186-CR, 2022 WL 480245, at *7 (Tex. App.—Corpus Christi–Edinburg Feb. 17, 2022, no pet.)

22

(mem. op., not designated for publication). Accordingly, there was no charge error here.[10]

*See Ngo*, 175 S.W.3d at 743; *Paez*, 2018 WL 3910023, at *6.

We overrule appellant's second issue.

## IV.   CONCLUSION

We affirm the trial court's judgment.

CLARISSA SILVA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
25th day of August, 2022.

---

[10] Appellant additionally argues his trial counsel's "[f]ailure to preserve the objection to the jury instructions based on a non-unanimous verdict" also constituted deficient performance. "To demonstrate deficient performance based on the failure to request a jury instruction, an appellant must show he was entitled to the instruction." *Davis v. State*, 533 S.W.3d 498, 513 (Tex. App.—Corpus Christi–Edinburg 2017, pet. ref'd). Having already concluded that the charge properly tracked the language from the statute, we now conclude that counsel was not deficient in failing to request an alternately phrased instruction or to object on this basis. *See Cueva v. State*, 339 S.W.3d 839, 878 (Tex. App.—Corpus Christi–Edinburg 2011, pet. ref'd) (concluding the same).